CASE No. 999.

DIAL v. GARY.

DIAL v. TAPPAN.

1. A citizen of Massachusetts died at his home, having in possession a bond and mortgage for money owing to him by a citizen and resident of South Carolina. The administrator *cum testamento annexo* of the deceased, for value assigned this bond and mortgage to another citizen of South Carolina, who brought in the proper court of this state an action against the mortgagor for foreclosure. *Held*, on demurrer, that such assignee had not the right or legal capacity here to bring the action.

2. A grant of administration vests in the administrator only such movable property as may be found within the territorial limits of the government which grants it; but choses in action are *bona notabilia* of the state where the debtor resides, and are the subject of administration there.

Before HUDSON, J., Richland, August, 1880.

These were five actions heard together, George L. Dial being plaintiff in all of them. One was against Edward F. Gary, Henry L. Tappan, Sarah B. King and others; two were against E. F. Gary and H. L. Tappan; and two were against H. L. Tappan. All·of these cases involved the same question. The Circuit decree is as follows :

The foregoing actions were all heard together on demurrer to the complaints. The pleadings in the first aforesaid action were alone read—counsel on both sides uniting and stating that the same issues were raised by the pleadings in all the actions, and that, therefore, the decision of one would conclude all. As the argument was made upon the pleadings in the first of these cases, we will address ourselves specially to that one.

The complaint alleges that on December 1st, 1874, the defendants executed and delivered to Asa Burke, a resident of the county of Suffolk, in the State of Massachusetts, their bond, bearing date of that day, in the penal sum of $8000, conditioned to

pay the sum of $4000 on December 1st, 1876, with interest at the rate of ten per cent. from date, payable annually. *Second.* That on the same day, to secure the payment of the said bond, the defendants executed and delivered to the said Asa Burke their deed, and thereby conveyed, by way of mortgage, a certain piece or parcel of real estate, situate in the county of Richland, in the State of South Carolina, therein fully described. *Third.* That on December 3d, 1874, this mortgage deed was duly recorded in the proper office. *Fourth.* That in the year 1879 the said Asa Burke died, leaving of force a last will and testament, in which, no executor being nominated, one Philip Sowden was, by the Probate Court of Suffolk, Massachusetts, duly appointed administrator of the estate of Asa Burke, with the will annexed, and qualified as such. *Sixth.* That on February 27th, A. D. 1880, the said administrator, for value, assigned to the plaintiff, Dial, resident in South Carolina, the said bond and mortgage, due by defendants, residents of South Carolina, constituting a lien on real estate here situated. *Seventh.* That the condition of the bond is broken, the mortgage forfeited, &c., and judgment of foreclosure and sale is demanded and execution for balance of debt after the application of proceeds of sale.

To this complaint the defendants demur upon the grounds—

*First.* That the plaintiff has not legal capacity to sue.

1. Because it does not appear that the administrator was vested with the right to transfer the legal title of said bond and mortgage to the plaintiff.

2. Because it does not appear that the said administrator had license to sell and assign said bond and mortgage.

3. Because it does not appear that letters of administration on the estate of Asa Burke, in South Carolina, have been granted, without which plaintiff, as assignee of the foreign administrator, cannot sue in the courts of South Carolina for the recovery of this debt.

*Second.* That there is a defect of parties, because the heirs-at-law and legatees of Asa Burke should be joined in the action.

*Third.* That the complaint does not state facts sufficient to constitute a cause of action.

Upon the issues raised by this demurrer the arguments of

·counsel were very full and characterized by much research and ability on both sides. We do not propose to follow the learned ·counsel through their exhaustive arguments, as we are wanting in time to do so, nor do we deem it necessary to encumber this ·decree with numerous citations of authorities or lengthy extracts from decided cases. In our opinion the fundamental inquiry is, whether the administrator of the domicile can transfer and assign bonds of the decedent, secured by mortgage of the realty in a foreign jurisdiction or other choses in action, against debtors .abroad, so as to enable such assignee to enforce said claim in the courts of such foreign jurisdiction without suing out letters of administration there upon the estate of the deceased.

We have no hesitation in saying that the estate of the decedent, situate in a foreign jurisdiction, cannot be administered in this way; and whether the plaintiff, Dial, be a real purchaser of these choses in action, or a purchaser only nominally, and for the purpose of collecting and accounting for these assets, does not alter the case. In either case it is clear that it is an attempt by the administrator of the domicile to administer the estate of Burke, in South Carolina, without the grant of letters of administration from the courts; it is an effort to accomplish indirectly what he could not do directly, to wit, to authorize and empower an assignee to bring suit on choses in action in this state, when, in his own name, he could not do so by his letters in Massachusetts. It is well established that the authority of an administrator is confined to the limits of the state in which he is appointed, and extends only to the personal estate therein situated. No title vests in him to that part of the personal estate which lies in another state. If it consists of debts due by residents of that other state, the evidences of which happen to fall into the hands of the administrator of the domicile, he cannot himself go into the foreign jurisdiction and sue for them without a new grant of administration, because, without such new grant of administration, he has no title to nor authority over the assets; it is very clear that he cannot, therefore, confer upon an assignee a right which he does not himself possess. If this could be done, an ancillary administration would rarely ever become necessary, .and the estates of deceased testators or intestates, in a large

majority of cases, would be fully administered by the domicil-
iary administrator, whilst the bulk of said estates might be in
a foreign jurisdiction, and the majority of creditors likewise
there. Great inconvenience and great detriment to creditors would
often result from such a rule. In each state must be adminis-
tered that portion of a decedent's estate within its borders, and
must be administered according to the *lex rei sitæ* and not the
*lex domicilii*. Whatever there be of the estate of Asa Burke
situated in South Carolina, can only be collected through our
courts by an administrator appointed here, and must be admin-
istered under and by our laws, without reference to the laws of
Massachusetts, until all debts here are fully paid, when the
surplus will be transmitted to the administrator in Massachusetts
and administered there according to her laws. This course can-
not be defeated by an attempted sale of these choses in action by
the administrator in that state. The assignee thereby acquires
no right to bring suit upon them in our courts. It has been
held that negotiable paper, to bearer, is not subject to this rule,
and that an administrator, coming in possession of such, acquires
such a title as will enable him to sue thereon, in his own name,
without styling himself administrator, wherefore he can transfer
the same to a stranger, who can likewise sue in another jurisdic-
tion in his own name; but the weight of evidence, we think, is
against this doctrine, which seems to us to be untenable on both
reason and authority. Certainly if the facts were to appear on
the face of the complaint on such a note, I think it would be
obnoxious to the demurrer in this case.

None of the authorities have gone so far as to hold that the
assignee of a bond and mortgage holding by the title set up by
the plaintiff in this action, can maintain this suit. Before he
can acquire a *status* in the courts of this state, either at law or
in equity, it is necessary that he sue out letters of administration
upon the estate of Asa Burke, here situate. That being done,
the entire form of these actions would be radically changed, so
much so that the change could not be effected by amendments.
A new action in each case would be necessary.

The authority upon which I chiefly rely for these views, above
expressed, is to be found in Story on Conflict of Laws, Sections

512 to 524, inclusive, *et seq.* Numerous other and more recent authorities were cited by counsel for the defendants, in argument, but all in harmony with the doctrine of Judge Story, and to cite them here is unnecessary.

It is therefore ordered and adjudged that in each of the above cases the demurrers be sustained, and that the defendants have leave to enter up judgment thereon against the plaintiff for the dismissal of the complaints, and for costs.

To this decree the plaintiff filed eighteen exceptions, which, in substance, were, that the administrator of the domicile had authority to sell, and, having sold, assigned and transferred the choses in action, the subject of this suit, to Dial; that Dial was authorized and alone authorized, as the real party in interest, to bring these actions in his own name; and that the demurrer should have been overruled. Upon these exceptions plaintiff appealed to this court.

*Messrs. Bauskett & Lynch,* for appellant, cited 3 *Mass.* 518; 9 *Id.* 337; 16 *Id.* 18; 115 *Id.* 510; 10 *Pick.* 468; 14 *Id.* 399; *Rev. Stat.* (*Mass.*), ch. *XCVIII.,* §§ 1–5; 6 *S. C.* 184; 27 *How. Pr.* 474; 32 *N. Y.* 1; 2 *Pet.* 239; 26 *Mass.* 577; 6 *Jones' L.* 94; 3 *Ind.* 309; 4 *Mason* 16; 9 *Whart.* 856; 3 *S. C.* 70; 20 *N. Y.* 112; 25 *Id.* 584; *Story's Confl. of L.,* §§ 359, 383, 384, 465–468, 516–518; 2 *Brev.* 307; 1 *McC. Ch.* 506; 2 *Id.* 168; 3 *McC.* 371; 1 *McC. Ch.* 191, 318; 1 *Rich.* 116; 10 *S. C.* 182; 13 *S. C.* 409; 7 *Johns. Ch.* 45; 10 *Paige* 549; 56 *Ala.* 312; 12 *Metc.* 422; 4 *Id.* 252; 2 *Sandf. Ch.* 173; 1 *Barb. Ch.* 189; 9 *Serg. & R.* 258; 4 *Id.* 392; 7 *Paige* 239; 11 *Wend.* 363; *Com. Dig.,* "*Chancery,*" 3 *G* 1, and "*Administration,*" *B* 11, 12; 1 *Ves.* 49; 1 *Atk.* 463; 3 *Atk.* 237; *Co. Lit.* 223, *a;* *Wms. on Ex'rs* 796; 17 *E. L. & Eq.* 582.

*Messrs. Melton & Clark,* contra, cited 1 *Rich.* 116; 3 *Mass.* 514; 10 *Cush.* 172; 16 *Mass.* 314; 9 *Cr.* 151; 5 *Rawle* 264; *Pot. Dwar.* 97; 110 *Mass.* 373; 8 *Bligh* 44; 4 *M. & W.* 171; *Story's Confl. of L.,* §§ 512–515; 8 *Cl. & F.* 306; 10 *Rich. L.* 109; 2 *Vt.* 333; 6 *Hill* (*N. Y.*) 554; 1 *Am. Law Rev.* 359; 2

*Metc.* 114; 4 *Id.* 255; 1 *Pick.* 81; 1 *Mills' Const. R.* 292; 10 *Rich. Eq.* 12; 7 *S. C.* 60; 5 *Greenl.* 261.

March 15th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. These cases were heard together below on demurrer to the complaints. The facts were the same in each. It appears that respondents, in December, 1874, executed to Asa Burke, a resident of the State of Massachusetts, their bond in the penal sum of $8000, conditioned to pay $4000 on December 1st, 1876. This bond was secured by mortgage of real estate situate in Richland county of this state. Asa Burke died in 1879, in Massachusetts, and one Philip Snowden, of that state, was appointed his administrator there by the Probate Court of Suffolk county, Massachusetts. Whereupon this administrator, for value, assigned to the appellant, Dial, a resident of this state, the said bond and mortgage due by respondents, also residents of this state.

Upon this bond and mortgage these actions were instituted by Dial. Respondents demurred to the complaint, and upon the hearing below the actions were dismissed.

The leading questions raised in the appeal, in fact we might say the single question, because, although there are numerous exceptions, they all hinge upon this, is: Whether the plaintiff (appellant,) being the holder of a bond, purchased by him from a domiciliary administrator abroad, has the right and legal capacity to sue said bond in this state, where the debtor resides, and where he, the appellant, resides.

"The owner of personal property, while alive, has always the possession or the right of possession to such property in whatever part of the civilized world it may be situated." Says Judge Butler in *Carmichael* v. *Ray*, 1 *Rich.* 116: "His possession follows his title, and, while alive, he may transfer and assign it to whomsoever he may see proper. And he needs no special authority for this purpose from the laws of the place where the property is situated. He can act in reference to it as any citizen of the place can act as to his property. But it is a mistake to suppose that, upon his death, his legal representatives, appointed under the laws of his domicile, are invested with like title and

power as to all such property; while the owner, when alive is, clothed with this authority, yet his death is an event which changes the character of the title, and invests new parties with power over his estate."

It is the duty of every government to protect its own citizens, and especially the rights of creditors, as the material and commercial prosperity of a country depends greatly on this protection and security. If a government fails in this, it fails in one of its most important functions and duties. To this end, therefore, it is well understood that the different governments in which the movable property of a deceased may be left, upon his death, are authorized to intervene and take control. Hence, in every state, we find laws declaring in whom such property, within its limits, shall vest, and in what manner it shall be administered. True, if the decedent has left a will or testament, upon such testament being established under the *lex domicilii*, it will usually be confirmed under the jurisdiction where the property is found. And the title of the executor, as well as the disposition of the property therein appointed and directed will be recognized there. But this confirmation must take place and be had in accordance with the laws of the *rei sitæ* before even an executor under such testament can intermeddle with the property. But in cases of intestacy there must be a grant of administration in such jurisdiction where property is found; it being well settled that the grant of no state, not even the grant of the state of the domicile, can extend beyond the territory of the government which grants it. Nor can it invest the administrator with title to any movable property, except to such as may be found within its limits.

These are the general principles applicable to executors and administrators in cases like this. *Wms. on Ex'rs*, vol. I., p. 320, and cases there cited, notes 321, 322; *Story's Confl. of L.*, §§ 512, 524.

It has been held in several cases in this state that a foreign administrator has no legal capacity to sue here. He cannot sue, because his appointment stops at the boundary of the state which appointed him, and because the title of the decedent's property, found here, under our laws, can only vest in an administrator

appointed here. *Carmichael* v. *Ray, supra; Tilman* v. *Waldrop,* 7 *S. C.* 60; *Richardson* v. *Gower,* 10 *Rich.* 109.

Now if the administrator of Asa Burke, appointed in Massachusetts, his domicile, had brought these actions, can there be a doubt that a demurrer would have been fatal? Or, if the property in question was movable, tangible property, such as horses, cattle, wares and merchandise, located in this state at the time of the death of Burke in Massachusetts, could his administrator, appointed there, institute suit for the recovery of such property? The right to sue for the recovery of property springs from title. Without title no right of action can exist under the authorities referred to above. No title to such property could vest in a foreign administrator. Neither would a foreign administrator have the power to sell or transfer such property, and for the same reason—the want of title.

It may be said, however, that while the principles announced above may be admitted, yet, on the other hand, it will also be admitted that if such property had been found in Massachusetts, the place of Asa Burke's death, that his administrator there would have the power to sell, and that the title of his vendee in such sale would be recognized, not only in Massachusetts but in every state, and wherever it might become necessary for him to enforce it. And it is contended that the bond and mortgage in this case being in the possession of Burke at his death, in Massachusetts, constituted a part of his effects and personal property in that state, to which administration there attached, giving the right to his administrator, Philip Snowden, to sell and transfer, and, therefore, that his assignment to appellant was valid.

This brings up the real question in the case. The bond sued on is, technically, a chose in action. Is a chose in action property, or merely the representative of property? Is it the substance or shadow? And where the obligor and obligee reside in different states, is the property involved in the bond to be regarded as situated in the domicile of the debtor or that of the creditor? If the bond followed the person of the debtor, and is to be considered as *bona notabilia* in the state where he resides, then the demurrer was properly sustained. If, however, it followed the person of the creditor, and is to be considered property

in Massachusetts, then, if the laws of that state have been com-. plied with, the appellant's title would be good. The term *chose* signifies *thing* or property. In law it is applied to personal prop-erty, as choses in possession are such personal things of which one has possession. Choses in action are such as the owner has not possession, but merely a right of action for their possession. 2 *Bl. Com.* 389, 397; 1 *Chit. Pr.* 99.

A chose in action, then, embraces two ideas; first, a visible, tangible thing, and, second, the right to sue for and recover that thing. These are separate and distinct elements, and the one may be situated in one locality and the other in another.

In the case now before the court the chose or thing is situated in South Carolina, and the evidence of the right to sue, at the death of Burke, was in Massachusetts, but that right could not be exercised in that state even by Burke himself, at least so long as the debtor continued in this state. In this view both the thing and the right to sue for it belonged to South Carolina, and, according to strict law, ought to be subject to administration here. Otherwise the great object of each state or government, retaining control over the property of an absent decedent, would be defeated entirely. If a foreign administrator, by virtue of finding choses in action in the possession of his intestate at the time of his death abroad on persons in other states, is so far invested with title as to enable him to assign such choses in action to a third party, the rights of domestic creditors might be wholly destroyed, and all of the laws providing local administration under local authorities for the protection of such creditors eluded and overthrown. It would seem then, upon principle, that the appellant took nothing by the assignment to him of the bond and mortgage in question. It is true, however, that the decisions in the different American states and in England are not uniform upon this subject, and they leave the question presented here in considerable doubt.

In *Leake* v. *Gilchrist*, 2 *Dev.* 75, it was broadly and distinctly held that debts due by specialty follow the person of the obligee and are assets of the domicile. In that case an assignment by the administrator of the domicile in South Carolina of a bond

on a citizen in North Carolina was recognized as valid, and suit brought by the assignee in North Carolina was sustained.

In the case of *Harper* v. *Butler*, 2 *Pet.* 239, the Supreme Court of the United States sustained an assignment of a promissory note due the estate from a citizen of Mississippi by an executor in Kentucky, without probate of the will in the former state, but in that case the debt was contracted in Kentucky, where the testator lived and died, and the assignment was made by an executor.

In *Doolittle* v. *Lewis*, 7 *Johns. Ch.* 46, an administrator of a creditor, who died in Vermont, having in his possession a bond and mortgage of real estate from a citizen of New York, sold said real estate in payment of the bond, but in that case the mortgage contained a power to the mortgagee, his executors, *administrators*, or assigns, to sell and convey, and the Chancellor, in pronouncing judgment, based the right to sell on this power, saying that the whole proceeding was extra-judicial and founded on private agreement. He did not recognize the administrator as such, or that he had any power by virtue of his foreign appointment, but he recognized the agreement of the parties. * * *

In this case it was said that a payment by a debtor to a foreign administrator would acquit the debtor. This, no doubt, is good law where no administration has been taken out in the state of the debtor, and especially where the intestate has no creditor there.

In *Peterson* v. *Chemical Bank*, 32 *N. Y.* 22, the right of assignee to sue was sustained, but there was full evidence offered that the intestate owed no debts in New York, and, therefore, the rights of creditors were not in the way.

On the other side, in the case of *Stevens* v. *Gaylord*, 11 *Mass.* 267, Judge Jackson said : " If a foreigner or a citizen of any other of the United States dies, leaving debts and effects in this state, these can never be collected by an administrator appointed in the place of the domicile."

In that case an absent debtor, who lived in Connecticut, had come within the jurisdiction of the courts of the State of Massachusetts, and the administrator of the creditor brought suit on

notes which he had possession of by virtue of his administration in that state.

The court held that the circumstance of the defendant having come into that state, so as to expose himself to action, could not affect the general principle, and that the debtor could not be compelled to pay to any one but to an administrator duly authorized in Connecticut, where the debtor lived.

This must have been upon the ground that the administration in Massachusetts does not give title, even in that state, to notes or other choses in action of deceased parties dying there, on persons in other states. Under this case, if the debtors here had gone into Massachusetts, the administrator of Burke could not have maintained action against them in the courts there. This seems decisive of the question, especially as to the bond sued on in this case. For, if the administrator, by the laws of Massachusetts, has never been invested with sufficient title to sue this bond, even in that state, and is without capacity to sue here, how could he transfer the bond to the appellant so as to invest him with power to sue?

See the case of *Cutter* v. *Davenport*, 1 *Pick.* 81.

In *Stearns* v. *Barnham*, 5 *Greenl.* 261, it was held that "an executor appointed under the laws of another state cannot endorse a promissory note payable to his testator by a citizen of this state [Maine,] so as to give the endorsee a right of action here in his own name."

In *Pond* v. *Makepeace*, 2 *Metc.* 114, it was held that an administrator in the State of Massachusetts of one who lived and died in Rhode Island, may sue for and recover a debt due by his intestate from a citizen of Massachusetts, although the administrator of such intestate, appointed in Rhode Island, had already recovered judgment in Massachusetts upon the same claim, it being undefended.

We have found no case in our own reports directly in point. But we think, upon principle and the weight of decisions elsewhere, that the order of the Circuit judge holding that the assignee had no legal capacity to sue in this case should be sustained.

The order below is affirmed and the appeal dismissed.

McIVER and McGOWAN, A. J.'s, concurred.