## COCHRAN v. FILLANS.

1. A widow residing with her child in the Island of Jersey, and being about to marry, transferred all her interest in the estate of her first husband, consisting of moneys, bonds, &c., in the hands of an administrator in South Carolina, to trustees in Jersey, without security, upon certain trusts in behalf of herself, and, after her death, in behalf of such issue as should attain their majority, or marry, &c., charged with a payment of half the income to her intended husband during life. Upon her death, leaving the said child, a minor, and her husband surviving, *held*, that the funds in South Carolina were not payable to the general guardian here of such infant, but to the trustees in Jersey under the marriage settlement.

2. *Held, further*, that the money being in this State, and the *cestui que trust* who may become entitled to it being an infant, the courts here cannot permit it to be paid over to the foreign trustees, until satisfied that they have given sufficient security in the Island of Jersey for its proper administration.

3. Before permitting property in this State belonging to an infant to be transferred beyond the limits of the State, the court must be satisfied (1) that the guardian has been regularly appointed according to the laws of the State in which the ward resides; (2) the fitness of such guardian for the appointment; and (3) that sufficient security has been given. And the same rule applies to cases of foreign trustees of an infant *cestui que trust*, who has property here.

4. This principle depends, not upon the residence of the infant in this

State, but upon the responsibility of the courts of this State for the pro-
tection of property within their jurisdiction belonging to *cestuis que trust.*
   MR. CHIEF JUSTICE SIMPSON dissented so far as the opinion required
trustees to give security.

Before KERSHAW, J., Charleston, June, 1881.

The opinion states the case.

*Messrs. Rutledge & Young,* for the guardians and Fillans.

*Messrs. Mitchell & Smith,* for the trustees.

November 27th, 1883.   The opinion of the court was deliv-
ered by

MR. JUSTICE McGOWAN.   William C. Murray died many
years ago, leaving a handsome property in this State.   John
Clarence Cochran, the plaintiff, was his executor, and in 1865,
filed a bill in Charleston for the partition and settlement of his
estate.   James Ancrum Murray was one of the children of the
testator, and before the estate was divided, married and died
intestate, leaving in the Island of Jersey, in the kingdom of
Great Britain, a widow, Victoria Isabella Murray, and one child,
an infant, William James Murray.   John C. Cochran thereupon
administered upon the estate of the intestate, James A. Murray,
in South Carolina, and filed a supplemental bill, in which the
property of William C. Murray was ordered to be sold, and the
share of the intestate, James A., was ascertained, of which his
widow was entitled to one-third, and the child, William James,
to two-thirds.   John Robert Davey was appointed *tuteur* or
guardian of the infant in the Island of Jersey, where a guardian
is not required to give bond and security for the faithful dis-
charge of his trust, but it seems that the electors, who recom-
mend the guardian, are, in some respects, responsible for the
manner in which he discharges the trust.   Henry Edward Young
and the said John Clarence Cochran were regularly appointed
the guardians of said infant in this State, and as such gave bond
for the faithful discharge of their trust.

In 1873, Mrs. Murray, the widow of James A., married in

the Island of Jersey a second husband, Maitland Hall Fillans, of London, and, in contemplation of the event, the parties entered into an ante-nuptial marriage settlement, which, among other things, provided that the third part of the said Victoria Isabella in the estate of her former husband, James A. Murray, should be conveyed to George White and Edward Jones, also of Jersey, as trustees, upon certain trusts, to wit : "After the death of the said Victoria Murray, in case the said Maitland Hall Fillans should survive her, to pay one-half of the net income derived from said property to him during his natural life, and subject to such life-interest of the said Maitland Hall Fillans in the half thereof, to hold all and singular the said property in trust for all the children of the said Victoria Isabella Murray, who, being a son or sons, shall attain the age of twenty-one years, or being a daughter or daughters, shall attain that age or marry. In case no child, being a son, shall attain such age, or, being a daughter, shall attain such age or marry, the trustees shall stand possessed of the said property upon such trusts and for such purposes as the said Victoria Isabella Murray shall declare by her last will," &c.

In 1877 the said Victoria Isabella died in Jersey, having first executed a writing in the nature of a last will and testament, but having the attestation of only two witnesses (sufficient at the place of her domicile to dispose of personal property), whereby she undertook to execute the power reserved to her in the articles of marriage settlement, by appointing her one-third of the estate of her first husband, James A. Murray, to go to her brother, John Robert Davey, and George White, as testamentary executors, upon certain trusts for her only son, the said William James Murray, her husband, Fillans, who survived her, and her own family, the Daveys.

This paper was admitted to probate both in Jersey and in the State of South Carolina.

This action was instituted by John Clarence Cochran, as administrator with the will annexed of Mrs. Fillans, in this State, making all the claimants hereafter mentioned parties. The complaint states that the said administrator, having duly administered the estate, which is in his hands, invested in bonds, stocks, &c., amounting to about $20,000, is ready and desirous of paying

out the assets and closing the estate; but he cannot do so on account of the conflicting claims interposed, and he prays for the instruction of the court as to whom the money shall be paid. First. Edward Jones and George White, of Jersey, trustees in the marriage settlement, claim that the property of Victoria Isabella Fillans, specified in the said deed, shall be transferred to them, as trustees, by appointment of the owner, without being required to give security therefor, either in Jersey or in this State. Second. Henry Edward Young, as one of the guardians of the minor, William James Murray, appointed and under bond as such general guardian in this State, claims that the plaintiff be required to pay all the funds in his hands as administrator of Mrs. Fillans, so that the same shall vest in him and in the said administrator, as guardians aforesaid, with orders to pay one-half of the income arising therefrom to the said Maitland H. Fillans, during his life, and the other half to the use of the said infant, William James Murray, in such way as the court may direct. In this prayer, Maitland H. Fillans, who is entitled to one-half the income of the property during his life, concurs and prays that the fund shall not be transferred to the trustees in Jersey. John Robert Davey, the uncle of the ward, and claiming to be his guardian by appointment and order of the Royal Court of Jersey, joins in the prayer of the trustees, and prays that the funds shall be paid to them.

The cause was referred to Master Porter, who reported that "The court is authorized and bound to protect this trust fund against accident or abuse by requiring those who claim the possession, either as guardians or trustees, to give bond and security for the faithful discharge of their trusts." Upon exceptions to this report, Judge Kershaw held that the interest of the minor, William James Murray, was contingent upon his attaining twenty-one years of age, and ordered the funds paid to the trustees in Jersey, upon their entering into bond, with approved security, to the clerk of the court for Charleston county, conditioned for the faithful discharge of their duties as such trustees.

All the parties appeal to this court. The South Carolina guardians from so much of the decree (1) "as holds that the said Murray is now entitled to no part of this fund, whereas he has a

vested interest in the same, subject, it is true, to be divested in case of death under age, and subject to the life-estate of Maitland Hall Fillans in the one-half thereof, is entitled to the income arising therefrom; (2) and as directs that the fund be sent without the jurisdiction of the court, without an inquiry whether this will be to the interest of the said infant; (3) and as holds that John Robert Davey has been appointed, by proper proceedings, the guardian of the said Murray; (4) and as holds that the funds in the cause are held by the plaintiff, as administrator of James A. Murray, whereas he holds them as administrator *cum testamentano nexo* of Mrs. Fillans, in this State; and in all other respects that the decree be sustained."

And the trustees appeal from so much of the decree as holds as follows: 1. "That the said defendants should be required to give security before the trust funds are transferred and paid over to them, no such security having been required by the donor of the trust, and no charge of insolvency or unfitness being made or shown against the said trustee. 2. Because the Circuit judge erred in not holding that if the said defendants should give security, they should only give such sufficient security for the execution of the trust as should be required by any competent court of general equity jurisdiction in the Island of Jersey or kingdom of Great Britain, or as should be sufficient in the place of their domicile."

If these funds were now due and payable to the ward, William James Murray, there is little doubt that his general guardians would be entitled to receive them, although they had not been appointed such guardians with any reference to this particular fund. But the question goes back of that. The funds due the estate of James A. Murray, by his death, were divided into two parts—two-thirds of them belonged absolutely to the minor, William James Murray, as the only child of his father. There was no trust or limitation over upon this portion, and, as we understand it, no question is now made concerning it. The other one-third of the estate went, absolutely, under the statute of distributions, to Victoria Isabella, as widow, but before it was reduced into possession, she, being about to marry a second

husband, conveyed it to trustees, as stated in the articles of marriage settlement, and the contention is as to the right to the possession and control of this fund.

The plaintiff instituted this action as administrator in South Carolina, with the will annexed, of Victoria Isabella Fillans, but it must be observed, in the first place, that the fund cannot now pass under the paper in the nature of a will executed by Mrs. Fillans and called her will. At the time of her death she was a married woman, and, by the law of her domicile, incompetent to make a general will; but, if she had been competent, she could not thereby dispose of property which she had previously settled. It is true she had the right to execute a power if the circumstances existed in which the right was given; but the articles of marriage settlement had assigned the property to trustees upon such trusts as carried the whole interest, except in the single case of all her children dying before they attained the age of twenty-one years, in which event alone she had the right to appoint to new uses. " In case no child, being a son, shall attain such age, or, being a daughter, shall attain such age or marry, the trustees shall stand possessed of the said property upon such trusts and for such purposes as the said Victoria Isabella Murray shall declare by her last will."

There is one child still living, who may attain to the age of twenty-one years, and therefore her appointment to uses cannot now take effect, but the property falls under the provisions of the marriage settlement, which gives the legal estate to the trustees, who "shall stand possessed" of it under the trusts therein declared. In this view, it seems to us that the question whether the interest of William James Murray is vested or only contingent upon his attaining the age of twenty-one years, does not necessarily arise, for in either case the property cannot now be delivered to any guardian of the minor, but must be held by the trustees until he attains the age of twenty-one years, and then delivered to him as the only child of his mother; or, if he should not attain that age, then, as we suppose, be distributed according to the paper in the nature of a will executed by Mrs. Fillans, as in that case the event will have occurred in which she was authorized to appoint to uses.

We agree with the Circuit judge that the absolute owner in her life-time, having conveyed this property to trustees for the purpose of carrying out certain trusts in contingencies which could not be foreseen, it should be transferred to those trustees to enable them to execute the said trusts. But the trustees are in the Island of Jersey, kingdom of Great Britain, while the property is here within the jurisdiction, and certainly, in one event, is going to a minor. Under these circumstances, will the court authorize the foreign trustees to receive the property and carry it beyond the jurisdiction; and if so, upon what terms and conditions?

In practice, our courts have relaxed what seems to have been the general rule against allowing such transfer, and, regarding themselves competent to do so, have ordered funds of infants under their control—that is to say, in the hands of executors or administrators—to be paid to guardians appointed and residing in other States. But in doing so the court takes every precaution to guard against abuse and loss to the infant, and for that purpose always requires a new appointment with bond and security in the jurisdiction, or at least a recognition of the foreign appointment upon proof here to be approved by the court of these things—First, the fact of a guardian having been regularly appointed according to the laws of the State in which the ward resides; secondly, the fitness of the guardian for the appointment; and, thirdly, whether sufficient security has been given. *Ex parte Smith*, 1 *Hill Ch.* 140; *Ex parte Heard*, 2 *Hill Ch.* 54; *Ex parte Copeland, Rice Ch.* 69. Judge Story, in his Conflict of Laws, § 504*a*, thus states the rule: "No foreign guardian can, *virtute officii*, exercise any right or powers or functions over the movable property of his ward which is situated in a different State or country from that in which he has obtained his letters of guardianship. But he must obtain new letters of guardianship from the local tribunals authorized to grant the same before he can exercise any rights or functions over the same," &c.

This being clearly the law as to foreign guardians, is there any reason why less should be required of foreign trustees appointed by the donor in her life-time without requiring

security?   It is said that the donor had the right to receive this property herself without giving security, and, having that right, she could appoint another to receive it in her stead.   The donor undoubtedly had that right before she executed the marriage settlement; but it must not be overlooked that she ceased to have that right the moment she executed the settlement, which introduced a new element, viz.; that of a trust in behalf of an infant who cannot receive the funds until he attains the age of twenty-one years.   It is this interest of the *cestui que trust* which, as it seems to us, makes it as much the duty of the court to secure these funds for the benefit of the infant as if the trustees had been appointed by the court in Jersey.

As Chancellor Dunkin said, in *Ex parte Copeland, supra:* "In the case of *Morrison* v. *Toomer*, decided recently by the Circuit Court in Charleston, it is said by the chancellor, 'the general doctrine and course of this court (equity) is well established; that it will not permit trust property to be removed out of the jurisdiction; and the trustee, who should knowingly and willingly permit this, would render himself liable to those who might be injured by his misconduct.   *   *   *   The court does sometimes permit trust property to be carried out of the jurisdiction, taking every possible precaution for the security of the *cestui que trust*.   *   *   *   Regarding the recent decisions on this subject as in some degree an innovation upon the practice of the court, it is not deemed expedient to extend them to cases where the reason does not manifestly exist.   The application is always addressed to the sound discretion of the court.   The presumption should always be against the removal of funds beyond the jurisdiction of the court; where the expediency or necessity is made clearly to appear, permission should be granted only on such terms as the nature of the case may require, or as experience may suggest to be necessary.'"

As we understand it, the practice of requiring security in such cases does not depend upon the domicile of the *cestui que trust*, or the manner in which his foreign guardian or trustee was appointed, but upon the view that the property being within the jurisdiction, the court is in some sense responsible for its safety, and will, therefore, not yield that control, except upon such

terms as will certainly secure and protect it. If Mrs. Fillans had created this same trust by will instead of by her marriage settlement, probate of the will and new administration in this State would have been necessary even for her executor to get possession here. *Dial* v. *Gary,* 14 *S. C.* 579; *Patterson* v. *Pagan,* 18 *S. C.* 584. We think that we cannot, according to the well-established principles of equity, authorize this fund to be carried beyond the jurisdiction without requiring security for its protection. See *Ex parte Robert,* 2 *Strobh. Eq.* 88.

But whilst the property is here, this is an English trust, to be executed by English trustees, and in behalf of persons who are resident in England, and it may be that it will be inconvenient for foreigners to give bond and security in this State for a sum so large, and particularly as it is a trust fund to be held probably for a number of years. These considerations have induced us to consider whether the purpose in view may not be accomplished by requiring that the trustees should give security in Jersey for the faithful administration of the trust. We have no right to make such an order. All that we can do is to control our own action according to the practice of this court and the well-established principles of equity. The Circuit decree is so far modified as to permit the trust fund to be paid over to the trustees whenever it shall be made to appear to the satisfaction of the Circuit Court that the trustees have given to the proper officers or court in the Island of Jersey good and sufficient security for the faithful administration of the trust declared in the deed of marriage settlement aforesaid. And in case such proof, to the satisfaction of the Circuit Court, is not offered, then that the trust funds be paid over only upon bond and security given in the county of Charleston as required by the Circuit decree.

The judgment of this court is that the judgment of the Circuit Court be modified according to the conclusions herein announced, and in all other respects be affirmed.

MR. JUSTICE McIVER concurred.

MR. CHIEF JUSTICE SIMPSON. I concur in this opinion of the majority, except so far as it requires the trustees to give bond

before they can receive the estate in contest. If the trustees had been appointed by a foreign court, then the principle relied upon would apply, as the foreign appointment would give the trustees no rights here; but I know of no general principle or authoritative case which would warrant the court to apply this to trustees acting under a trust-deed executed between the parties in which no bond is required, unless a case is made in behalf of the *cestui que trust* showing danger to his interests, upon which the court might act.

Judgment modified.