## GUGGENHEIMER & ADELSDORF v. GROESCHEL.

1. Creditors having entered into a composition with their debtor after an assignment made by him of all his property for their benefit, the assignment was thereby vacated, and the property restored to the debtor; and the assignee could not thereafter seize such property.
2. An insolvent living debtor having made no appropriation of his property to the payment of his debts, and there being no outstanding liens, his creditors cannot by action subject his property to distribution among his creditors; but such an action having been prosecuted without objection on the part of the debtor, the court treated the case as if an assignment had been made.
3. There being no liens and no preferred creditors, the property of the debtor must be distributed ratably among all the creditors.
4. Where creditors, who have entered into a composition with their debtor, receive from him an amount in excess of their share under the composition deed, it is no fraud upon subsequent creditors; and under a subsequent assignment they are entitled to demand and receive their dividend upon a new debt, without accounting to subsequent creditors for the excess so received on their first debt.
5. Where a creditor surrenders his preference under a former assignment, he is not thereby estopped from claiming his debt under a subsequent assignment by his debtor.
6. Claims having been established before a referee, under a call for creditors, and there being no dispute as to the amounts due upon the several claims, it was error to direct the creditors to be again notified to present and prove their demands.

Before COTHRAN, J., Fairfield, September, 1884.

The opinion states the case. The Circuit decree, omitting its statement, was as follows:

The pivotal point of the case, in my judgment, is the transaction of March, 1882, by which the assignee gave up the control of the estate and Groeschel became possessed of it. This was either justified under the act (or deed, if there was one) of composition, or it was an unauthorized abandonment of the trust by Withers. I must assume the former to be the case, unless the latter were made to appear by proof, and of such there is none. I am forced by the proof further to conclude that Sternbach knew of the transfer and ratified it in August, 1882, by receiv-

ing $1,000 of his claim from the hands of Groeschel.  His letters show that he had confidence in Groeschel's integrity ; and, as his relative, he was much concerned about his pecuniary condition, and was willing to assist him.  The composition with the unpreferred creditors, to which Sternbach assented, superseded the assignment.  See *Bur. Ass.*, 567.  Groeschel says in his testimony, and it is not contradicted, that the assigned estate sold for enough to pay the preferred creditors and the composition notes, except Samuels, who was secured by mortgage of real estate.  Sternbach promoted the arrangement, was deeply concerned about it, acquiesced in it, ratified it by receiving a part of his debt, six months after it was made, from Groeschel, made no further demand for eighteen months, and until Withers again took charge of Groeschel's effects, and he is now estopped from setting up his claim here.  2 *Pom. Eq. Jur.*, 965–1083 ; 4 *Wait Act. & Def.*, 332.

The next question is, shall Kerngood Bros. and Wiesenfeld & Co. account for the excess over 36 per cent. received from Groeschel on their claims under the assignment before participating in the fund in hand ?  If it had been shown that such excess had been paid from the assigned estate, much, if not all, that has been said in argument about "clean hands," "he who asks equity must do equity," "equality is equity," &c., &c., would be of easy and necessary application to the case, but the only proof upon this point is directly to the contrary.  The defendant, Groeschel, most likely of all to know the fact, says in his testimony, after some unbecoming hesitation, but positively touching both claims : "Did not pay this additional amount out of sales of either old or new stock."  This is affirmative proof and repeated.  The witness was not impeached.  There was no countervailing testimony.  It is not impossible, not improbable, nor without high precedent.  He may have had other funds, and if so, with such it appears that he made unto "himself friends of the mammon of unrighteousness."  In the absence of any proof to show that such excess was paid from the assigned estate, and with the positive proof that it was not so paid, I should not feel warranted in denying to Kerngood Bros. and to Wiesenfeld & Co. the right to participate fully in this distribution.  These

claims are otherwise unquestioned, and certain it is that the very fund in controversy has been derived in part from goods and merchandise of theirs taken up by the defendant, Groeschel.

Wherefore it is adjudged and decreed : 1. That the funds in the hands of Isaac N. Withers, the former assignee, be turned over to the clerk of this court for distribution. 2. That the clerk do pay out first, the costs of this proceeding and any arrears of taxes that may be due upon said property. 3. That the balance be paid out *pro rata* to the creditors of Joseph Groeschel (excepting the defendant, Charles Sternbach), who shall, under the usual form of publication by said clerk, present and prove their demands before him within sixty days from the filing of this judgment. All creditors failing or refusing so to present and prove their demands within the said time, shall be debarred from all benefits hereunder. 4. Any of the parties in interest are hereby permitted to move for any further orders in their behalf.

The points raised by the exceptions are sufficiently stated in the opinion.

*Mr. A. S. Douglass*, for plaintiffs.

*Mr. J. H. Rion*, for Sternbach.

*Mr. J. E. McDonald*, for respondents.

July 20, 1885.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The defendant, Joseph Groe-schel, on February 8, 1882, being then a merchant at Winns-boro, Fairfield County, and insolvent, made an assignment of all his real and personal property, consisting of a stock of goods and a certain lot situate in said town, for the benefit of his creditors, in which certain named creditors were preferred, among them the defendant, Charles Sternbach. The defendant, Isaac N. Withers, was the assignee. Shortly after the execution of this assignment, a meeting of the creditors was had in pursuance of the statute in such case made and provided, at which meeting the said Isaac N. Withers was appointed agent of the creditors.

Before anything was done by the assignee with the assigned

property, Groeschel, the debtor, compounded with his unpre-
ferred creditors by agreeing to pay them 36 per cent. on their
claims, this amount to be paid in four instalments and in full of
said claims, for which he gave notes, bearing interest from Feb-
ruary 18, 1882, and payable to James H. Rion, as attorney for
the creditors, all of which have since been paid.    He also made
satisfactory arrangements for the payment of the claims of the
preferred creditors, all of whom have since been satisfied, except
the defendant, Charles Sternbach, there being still remaining on
his claim some $1,200, after crediting a payment of $1,000 made
in August, 1882.

After this composition and arrangement, to wit, in March,
1882, the assignee returned the stock of goods to Groeschel, the
assignor, who immediately resumed his former business of buy-
ing and selling goods, commencing with this returned stock, in
which he continued until January, 1884, depleting and replen-
ishing his stock, from time to time, as the business required, and
without interruption from any quarter.    During this time he
contracted many debts in the purchase of goods, and among them
the plaintiffs'.    In 1884, when the greater part of the stock, if
not all, which had been returned to him by Withers, the assignee,
had been exhausted and its place supplied by other purchases,
being threatened by his subsequent creditors, Withers took pos-
session, claiming, as it seems, under the original assignment.    It
does not appear whether this action of Withers was assented to
or not by Groeschel.    However, Withers took possession and
immediately sold the goods on hand.    Out of the proceeds of the
sale, Withers paid off the last of the four notes given by Groe-
schel to his unpreferred creditors mentioned above, and also a
note to one J. Herbst, with certain expenses and commissions,
leaving in his hands the sum of $2,978.64.

At this juncture of affairs, the plaintiffs commenced the action
below, claiming to be a creditor on account of goods sold and
delivered on December 16, 1883, amounting to $274.91, and
demanding judgment: 1st. That the defendant, Isaac N. With-
ers, assignee as aforesaid, be enjoined from paying out of the
funds or assets in his hands, or under his control, any balance
that may be claimed to be due the defendant, Charles Sternbach,

as a preferred creditor, or from making any other disposition or application of said funds, except as ordered by the court. 2d. "That the plaintiffs be paid their debt, or their proportionate share thereof, in the ratable and equitable distribution of the same among such of the creditors as may come in and establish their claims in this action." The defendants answered the complaint, admitting the facts alleged in the complaint, except the statement that the stock of goods taken by Withers in 1884 had entirely "changed its component parts" from the stock turned over to Groeschel under the composition agreement in 1882, which was denied. It was also denied that Sternbach had "concurred and acquiesced in and assented to the transfer and delivery of the assigned goods and assets to the said Groeschel by Withers, and that he made a new agreement with Groeschel as to his debt," and Sternbach claimed that he was entitled to be paid the balance due him out of the funds in the hands of Withers as a preferred claim.

The case was ordered to a referee, with instruction to call in all creditors claiming to share in the distribution of the money in the hands of Withers. Under this call, three classes of creditors established their demands. 1. A preferred creditor under the original assignment who had not been paid in full, to wit, Charles Sternbach, whose claim is mentioned above. 2. The unpreferred creditors under said assignment who had been paid their then existing claims, but who since that time had become creditors of Groeschel for goods and merchandise sold him, to wit, Kerngood Bros. and Wiesenfeld & Co. And 3. Those who were not creditors at the time of the original assignment, but had become so since, to wit, the plaintiffs. Upon the coming in of the report of the referee, which contained the testimony upon the issues raised in the pleadings and the claims established, the case was heard by his honor, Judge Cothran.

In the testimony reported, it appeared that Kerngood Bros. and Wiesenfeld & Co., who, as stated, were unpreferred creditors of the original assignment, had received, by a private arrangement made with Groeschel in the composition with them, considerably more than 36 per cent. on their claims, and the plaintiffs contended that they should account for this excess on their new

claims now before the court.   Plaintiffs also contended that the defendant, Charles Sternbach, having made a new arrangement with Groeschel as to his preferred claim, should be confined to that, and was entitled to nothing out of the funds in the hands of Withers.

His honor, the Circuit Judge, sustained the plaintiffs as to Sternbach's claim, but overruled it as to Kerngood Bros. and Wiesenfeld & Co., and he ordered (1) that the funds in the hands of Withers be turned over to the clerk of the court for distribution ; (2) that the clerk, after paying the costs, taxes, &c., distribute the balance *pro rata* among the creditors of Joseph Groeschel (excepting Charles Sternbach), who shall, under the usual form of publication by said clerk, present and prove their demands before him within sixty days from the judgment rendered, &c.

The plaintiffs have appealed from so much of the decree as allowed Kerngood Bros. and Wiesenfeld & Co. to share in the funds in contest without accounting for the excess received in the composition, and also from so much as directed the creditors to establish their demands over before the clerk.   Sternbach appealed because his claim was ruled out, and also from so much of the decree as directed the funds to be turned over to the clerk and that the creditors should again establish their demands before him.

This is a novel case, and in some of its features without precedent in the books.   The main, and as was said by the Circuit Judge the pivotal, question is the effect of the composition upon the original assignment.   The Circuit Judge held, in substance, that it annulled, cancelled, the assignment, and in this we think he was entirely correct.   The object of the composition, no doubt, was to accomplish this, the creditors by their action at least assented to it, and the assignee carried it out by openly returning the assigned property to Groeschel, upon which he, Groeschel, again began to merchandise, continuing in the business for some two years without objection.   We think these facts were entirely sufficient to authorize the conclusion of the judge, that the assignment was at an end.   The assignment then being at an end, the property belonged to Groeschel, unencumbered, and by

what right Withers afterwards seized the stock of goods in question, or upon what foundation the plaintiffs instituted the action below for the distribution of Groeschel's property among his creditors, we cannot exactly see. Groeschel is alive, and although insolvent, yet his property is not encumbered with conflicting liens, needing adjustment by the court. Nor has it become by the execution of any paper or agreement a common fund belonging to the creditors. But Groeschel has not objected, and we must suppose that Withers took possession by his consent, and that this transaction amounted to a verbal assignment by Groeschel of his property for the benefit of his creditors. In the absence of all objection by Groeschel, we must so regard it, otherwise the case has no status in court, the original assignment being cancelled.

What are the rights, then, of the parties under this view of the case? No creditor having a prior lien by judgment, mortgage, or otherwise over others, the property would be subject to be pro-rated among all. We cannot see how Kerngood Bros. and Wiesenfeld & Co. can be made to account for the excess which it is said they received in the settlement of their former claims, nor why Sternbach should be excluded altogether. All these parties have claims against Groeschel, his property is about to be distributed among creditors by his consent, no one of whom has a lien thereon, and if he does not object to these parties getting a share, who can?

It is contended, however, in reference to Kerngood Bros. and Wiesenfeld & Co., that under the law of assignments, where a composition takes place, if the debtor, by a secret agreement, pays more to one creditor than to another, that the transaction is fraudulent, and the amount paid by the debtor may be recovered back. *Pom. Eq. Jur.*, § 967. This, no doubt, is good law. But upon whom is such a transaction fraudulent? and for whose benefit can the amount thus fraudulently paid be recovered back? It is fraudulent upon the other creditors entitled under the assignment, and if voidable, it is voidable by them, and by them alone. Because they are the only parties injured, and consequently the only parties having a cause of action. *Pomeroy*, § 967, *supra*; 1 *Story Eq.*, §§ 378, 381. The plaintiffs here do not occupy the position of a

creditor at the time of the original assignment. Their claims have been contracted since, and we find no authority warranting them to claim in a proceeding like that they have instituted here, that Kerngood Bros. and Wiesenfeld & Co. should refund the alleged excess. Suppose they were required to refund, what lien would these plaintiffs have upon the money, or what right would the court have in the absence of such lien to appropriate any portion to the plaintiffs? If there is any party before the court who has a right to complain, it is Sternbach. He was a creditor at the time of the assignment, and was entitled to know the terms of the composition. But he makes no claim.

Next, why should Sternbach be excluded altogether? It is said that he was amply secured under the assignment, being a preferred creditor, yet he allowed the goods to be restored to his debtor, and permitted him to resume and continue business for nearly two years, when he ought to have interposed and demanded payment of his claim. This, it is true, was enough to prevent him from now attempting to set up the assignment and claim as preferred creditor thereunder—*perhaps* so, if even he could find and identify the assigned property, *certainly* so, as to property since acquired by his debtor. But upon what principle can it be said that his debt should not be paid out of subsequently acquired property until all other debts are paid? It is contended by the plaintiffs, and by Kerngood Bros. and Wiesenfeld & Co., under the principle of *Goodhue* v. *Barnwell* (*Rice Ch.*, 240), and other similar cases, he should be excluded. What is this principle? In the case of *Goodhue* v. *Barnwell,* the court held that if a creditor stands by and suffers the personal estate to be squandered, he will not afterwards be permitted to look to the heir for payment. In *Richardson* v. *Inglesby* (13 *Rich. Eq.,* 59), an execution creditor allowed the bidder at sheriff's sale to take possession of the property without payment. It was held that the execution was satisfied.

The principle of these cases, and many others like them, is that a party will not be permitted to defeat other creditors on a certain fund by interposing a claim otherwise provided for, and which he has failed to secure out of the provided fund, on account of his negligence or bad faith. The doctrine of estoppel

to some extent comes in. But it would be straining this principle very far here—indeed, much too far—to bring Sternbach within it, and altogether exclude his claim. That he surrendered his claim as a preferred creditor under the assignment was an act of kindness to Groeschel, his debtor. Certainly no creditor then in existence had the right to object. He was injuring no one but himself. After he surrendered, his claim as a preferred claim over the property assigned was gone, and gone forever; and how, therefore, can he be charged with standing by and allowing his debtor to squander this property? When he surrendered he then became a simple creditor, just like the plaintiffs and Kerngood Bros., and had no higher rights than they, nor any greater power than they, to stop Groeschel in his downward mercantile career. We can see no legal reason why Sternbach should not have a share in these funds, which it seems Groeschel has consented to be distributed among his creditors without preference.

It being conceded that there are no other creditors of Groeschel except those before the court, and there being no dispute as to the amounts established before the referee, it would be incurring costs and expenses unnecessarily to require these debts to be again established. We think the funds in hand, after paying off expenses allowed, should be distributed by the clerk of the court for Fairfield County among the plaintiffs, Kerngood Bros., Wiesenfeld & Co., and Charles Sternbach, *pro rata,* according to the amount of the claims of each. And to this end,

It is the judgment of this court that the judgment of the Circuit Court be modified as herein above. Let the case be remanded.