## JONES v. JONES.

1. ADMINISTRATOR—BUSINESS CONTINUED—COMMISSIONS.—An administrator having carried on, under order of the Probate Court, a tannery business of his intestate, he received therein $13,552 and paid out $12,923.84, leaving a balance of $628.16, on which balance alone the Probate Court allowed commissions to the administrator. *Held*, that there was no error in disallowing commissions on the sums other than this balance.

2. IBID.—IBID.—IBID.—Nor is he entitled to the appraised value of the personal property connected with this tannery and turned over to him, there being no evidence to show that he had converted it into cash, and only $628.16 left in his hands to represent his administration of this tannery business. Leave given to appellant to apply for compensation for his services in the management of this business.

3. ADMINISTRATION, DOMICILIARY AND ANCILIARY.—Where money is voluntarily paid to administrator of the domicil in another State, and he there disburses it, the evidence showing that there were creditors in that State, and not showing that there were no distributees there, the administrator may be chargeable as an executor *de non tort* in the foreign State, but cannot in the domiciliary jurisdiction be charged with his receipts or credited with his disbursements in another jurisdiction. The respective duties and liabilities of the principal and anciliary administrators stated.

4. EXCEPTIONS—CASE.—Error cannot be imputed to the Circuit Judge in refusing to allow the administrator credit for expenses incurred, where the case fails to show that any expenses had been incurred or any ruling made upon this point.

5. PETITION FOR REHEARING refused, and the ruling of the main opinion reaffirmed and declared.

Before WALLACE, J., Newberry, May, 1892.

In this case, the Hon. James Aldrich, judge of the Second Judicial Circuit, sat in the place of Mr. Justice Pope, who had been of counsel.

Action by Lambert J. Jones, as administrator of Benson M. Jones, deceased, against Lillie W. Jones and others, commenced December 29, 1880. All the facts stated in the case are re-

stated in the opinion of this court. The probate decree is not printed in the record, nor are any of the exceptions thereto. The Circuit decree was as follows:

This is an appeal from a decree of the Probate Court, and was heard on a number of exceptions filed by Lambert J. Jones, as administrator, plaintiff, and George S. Mower, one of the defendants. The decision of this court on the points made by the exceptions of George S. Mower to the probate decree has been filed. It only remains to pass upon the exceptions made by Lambert J. Jones, as administrator, etc.

First, then, as to the commissions on the money paid out in the conduct of the business of the tan-yard. I will have to sustain the probate judge. The law allowing commissions to administrators contemplates commissions on funds originally received and finally paid out, because administration does not contemplate the turning over of funds, or their investment in a business or the conduct of a business, paying out and receiving money in that way. As I have already said, the law allowing commissions, only contemplates the original receiving of the money and the finally paying it out, because that is the business of the administration; to collect assets, convert them into funds, disburse them for debts and to the distributees. I do not know of any rule of law that would allow an administrator commissions on lending money that he has received, and commissions on receiving that same money, and collecting it in a note made payable to him for money borrowed, or repeating that operation in succession. Because, if he could do it in one instance, he might do it in repeated instances, and by that means, perhaps, the increment of interest might be consumed by the administrator. It is, therefore, ordered, adjudged and decreed, that the eighth exception to the probate decree be, and the same is hereby, disallowed and overruled.

Now, as to the payments upon the account in North Carolina, I think the probate judge is right in not allowing the same. The argument of counsel is, that if an administration upon the estate of Benson M. Jones had been taken out in North Carolina, the administrator would have been required to make his return there, and it would be required of him to disburse the

funds there, according to the laws of North Carolina, and that the creditors in North Carolina would have a preference in the disbursement of the property that was found there. That is the rule in South Carolina. What it may be in North Carolina, I do not know, but there was no such thing as that done. The money was collected in North Carolina and was disbursed in North Carolina, but the accounting was had here, and when the accounting is had here, why the law that governs the forum in which the accounting was had is necessarily absolute in this transaction. The probate judge here in this county cannot administer the laws of North Carolina, but those of South Carolina, because in legal contemplation he knows nothing about the laws of North Carolina, and they do not bind him at all. The third exception to the probate decree is, therefore, disallowed and overruled, as is also the seventh, so far as any amounts paid upon open accounts in North Carolina are included in the sum of $313.65-100, mentioned in said seventh exception.

The matter that has given me some perplexity is the disallowance absolutely of all the money that has been paid out on claims against the estate by the administrator. Now suppose, for example, that there has been a debt against the estate of $1,000; $150 had been paid upon it by the administrator. There is a balance left in his hands. A certain per centage can be paid out of that balance to all claims that have been established before the Probate Court. A claim, suppose, of $1,000, on which $150 has been paid, is presented for the *pro rata* share of the funds remaining in the hands of the administrator. Of course, the *pro rata* share of such a claim would be reduced to the extent of the $150 that had been paid upon it. If it is reduced to that extent, of course the estate gets the benefit of it, and if the estate gets the benefit of it, the administrator ought to have credit for it. So I am inclined to modify the decree of the probate judge in this respect: that wherever the payment by the administrator upon any claim allowed by the probate judge has been less than the *pro rata* share to which that claim would be entitled, according to the amount that was found to be in the hands of the administrator, the administrator is en-

titled to a credit. For all sums in excess of that *pro rata* share upon claims that have been allowed by the probate judge, he is not entitled to that credit. And for all payments made upon claims that have not been allowed by the probate judge, he is not entitled to credit.

It is, therefore, ordered, adjudged and decreed, that exceptions I., II., IV., V. and VI. be, and the same are hereby, sustained to the extent just above set forth, and also exception VII., so far as said exception relates to payments upon accounts made in South Carolina. And it is further ordered, adjudged and decreed, that all other exceptions to the probate judge be overruled and disallowed, and that the case be remanded to the Probate Court, in order that the accounts may be readjusted in accordance with the principles herein set forth.

The plaintiff appealed on the exceptions stated in the opinion.

*Mr. Thomas S. Moorman*, for appellant.

*Mr. G. G. Sale*, contra.

May 11, 1893. The opinion of the court was delivered by

MR. JUSTICE ALDRICH. The statements contained in the "Case" herein are very vague and meagre, and we have had great difficulty in ascertaining what facts were before the Circuit Judge. The "Case," including the decree of his honor, Judge Wallace, should be included in the report of the case.

Bensom M. Jones, the intestate, at the time of his death, owned and operated a tannery in this State. On November 22d, 1876, appellant herein, as administrator of said intestate, procured an order from the Probate Court of Newberry County, which gave him "leave to continue the business" of the tannery, "until the further order of this court in the premises." Under this order, appellant, in the conduct of said business, received $13,552, and paid out $12,923.84, which left a balance of $628.16 in the hands of appellant. Appellant claimed commissions for receiving said $13,552, and for paying out said $12,923.84. The probate judge disallowed appellant's claim for commissions, except on the balance of $628.16, which he

did allow. The decree of the Probate Court was affirmed by the Circuit Court, from which judgment appellant appeals to this court, his fourth exception being as follows: "Because his honor erred in overruling plaintiff's eighth exception to the probate judge's decree, which disallowed plaintiff's commissions on $13,552 for receiving and paying out the same in the management of the tannery under the order of the Probate Court."

It will be noted that the claim is, in terms, for commissions upon money received and paid out in the "management of the tannery." Administrators, although entitled to be reimbursed their actual expenditures in the execution of their trust, are not, in the absence of statutory regulations to this effect, entitled, merely by virtue of the relation, to any allowance for their care and trouble. *College of Charleston* v. *Willingham*, 13 Rich. Eq., 201; 7 Am. & Eng. Enc. Law, 431-441; 2 Wms. Ex'rs., 1315, 1316. "It is a general principle, that an executor or administrator shall have no allowance, at law or in equity, for personal trouble and loss of time in the execution of his duties. 2 Wms. Ex'rs., *supra; Logan* v. *Logan*, 1 McCord Ch., 5, 6; 7 Am. & Eng. Enc. Law, 437, note 1.

The common law, or as many of the writers term it, "the general rule," above stated, was superseded in this State by the act of assembly of 1745, amended in 1789, and now incorporated in the General Statutes as section 1945. *College of Charleston* v. *Willingham, supra.* This act, briefly stated, allows an administrator or executor, for his "care, trouble and attendance" in the execution of his duties, to "take, receive or retain" in his hands a sum not exceeding two and a half per cent. on each dollar which he "shall receive," and a like commission on each dollar he "shall pay away in credits, debts, legacies or otherwise, during the course and continuance" of their "managements or administrations." Said act also allows administrators or executors a sum, as commissions, which shall not exceed ten per cent. on the dollar, on all money received as "interest" from money of the estate lent out, as an investment, during the continuance of the administration. Section 1946 gives to an executor or administrator "who shall have had

extraordinary trouble in the management of the estates under their care, and shall not be satisfied with the sums hereinbefore mentioned," liberty to bring an action in the Court of Common Pleas for their services, &c. No suit for "extraordinary trouble" was brought by appellant.

The act allows commissions on money—"dollars"—and not on property; the idea being that the commissions for receiving were meant as compensation for converting property into money, and the commissions for paying away were intended as compensation for ascertaining to whom the money was due, and then paying it to such person. Commissions have been allowed, in a number of cases, in favor of administrators and executors upon bonds, notes, accounts, &c.; but the basis of each decision was the fact that these bonds, notes, accounts, &c., had been used in lieu of money, the principle being that that which was *used as money*, in equity and fairness, should be *regarded and considered as money.*

The reasoning in the following cases support the above proposition. An executor retained commissions on specific legacies delivered, and the legatee sued the executor to recover the commissions retained. The judgment was in favor of the legatees. Chancellor DeSaussure, in his decree, which was affirmed, says: "It has always appeared to me that the ground for compensation to executors being made by law to rest solely on the foundation of money received and paid away, was not a perfectly reasonable rule; inasmuch as there is often great service performed by executors when only small sums of money are received and paid away. But I do apprehend the law to be clear on that point, and I do not feel myself at liberty to depart from it. I do not sit here to make law, but to administer it." *Ruff* v. *Executors of Summers*, 4 DeSaus., 530. The distributees purchased property at the executor's sales, and gave bonds for purchase money; and the executors were held to be entitled to commissions on the amount of the bonds delivered to the distributees respectively, and set off against their claims to shares of the estate. *Deas* v. *Spann*, Harp. Eq., 176; *Gist* v. *Gist*, 2 McCord Ch., 473, explained in *Ball* v. *Brown*, Bail. Eq., 374; *Kiddle* v. *Hammond*, Harp. Eq., 223. In *Kiddle* v. *Hammond*,

*supra,* the court say, there is no "substantial difference between an executor obliging a creditor who has purchased property of the estate to pay the money, and then to repay him the amount as a creditor, and passing receipts with him." See, also, *College* v. *Willingham, supra.* "An executor, continuing the business of the testator, is not entitled to commissions on money paid out for goods, and money received from the sale of the goods so bought. In such a case, the proper compensation is a reasonable allowance for the time and labor bestowed in carrying on the business." *Dwyer* v. *Kaltayer* (Tex.), 5 S. W. R., 75; 7 Am. & Eng. Enc. Law, 439, note; *Snow* v. *Callum,* 1 DeSaus., 542; *Logan* v. *Logan,* 1 McCord Ch., 5 and 6.

An extreme case, by way of illustration, will show the reason of the law. Suppose a fishmonger, who daily bought and sold $100 worth of fish, should die intestate, and his administrator, by leave of the court, should continue the business for forty days. At the expiration of the forty days, the administrator will have "received" $4,000 and "paid away" $4,000 in the purchase and sale of fish. If he should be allowed commissions for receiving and paying out $4,000, the estate will owe him $200 as commissions, and the result would be that the administrator could credit his commissions account with the $100, the *corpus* of the estate, and apply the profits of his forty days' business, if any, towards the payment of the $100 still due. If such a principle was recognized, it would enable administrators, if so inclined, to actually destroy estates for their own advantage.

If appellant had made a profit in his management of the tannery business, we might, by analogy, allow him commissions on the profits, just as commissions are allowed by the act upon "interest" earned by lending out the money of the estate. But instead of profit being made, the estate has lost by the tannery business. We think that the plaintiff, appellant, is not entitled to commissions on the $13,552 paid out and received "in the management of the tannery."

Appellant, in argument, contends that he is entitled to commissions on $4,952.25, the amount at which the tannery, exclusive of the real estate, was appraised when it was turned

over to him.  "The two and a half per cent. for paying away refers to the final disposition of it (the money), or, in other words, to that point of time when the executors' power over it ceases,  *  *  *  The mode of determining what time he is to be credited with it, is by inquiring whether he has made a final disposition of the fund."  *Taveau* v. *Ball*, 1 McCord Ch., 462-3.  In this instance the money was paid out in the tannery business, with the intention of getting it back with a profit, and was, in no sense, a "final disposition of it."  The claim for commissions for receiving the $4,956.25 rests upon the assumption, that appellant, under the order of the Probate Court, actually sold the property at the appraised value, and received the cash therefor.  There is no evidence to support such an assumption.

All that appellant can show for that property, as well as from the management thereof, is $628.16.  The loss of $4,328.09, on property appraised at $4,956.25, may be due to misfortune or accident, though there is no evidence that such was the case. Appellant, so far as the "Case" shows, kept no separate account of the sale of the appraised property, hence we cannot say how much it was sold for.  Perhaps the property was old, the appraisers may have overestimated the quantity, may have been mistaken as to the quality, or erred in fixing its value.  So far as we can tell, the "appraised" property may have been sold for $628.16, the amount now in the hands of appellant. The Probate Court did not charge appellant the "appraised" value of the property.  We are inclined to think that the case stands upon the rule covering property which is lost while in the hands of administrators pending a sale thereof.  If, for instance, an administrator receives a horse belonging to his intestate's estate, appraised at $100, and the horse should die before the sale of the assets of the estate, the administrator could not charge commissions on the "appraised" value of said horse. We must overrule this exception; but this ruling is made without prejudice to appellant's applying, if he so desires, to the Probate Court for compensation for his time and services rendered in carrying on the tannery business, under the order of that court.  Upon that subject we express no opinion.

The first exception is, "Because his honor erred in not allowing plaintiff credit in his accounts as administrator with the payments of fifty dollars to Miss Anna Woodfin on 22d May, 1877; fifty dollars 11th July, 1877, and fifty dollars on 22d November, 1877." The facts upon which this exception rests are, that the money paid to Miss Anna Woodfin was collected in North Carolina, upon a debt due by a citizen of that State to intestate. The money was never brought within the territorial limits of South Carolina; but was paid to Miss Woodfin, a citizen of North Carolina, upon a debt due to her by intestate. No administration upon the assets of intestate has been granted in North Carolina. The "Case" does not show that intestate was indebted to any other of the citizens of North Carolina; but it shows that litigation is about to be instituted in that State against the estate of intestate.

If the law of North Carolina is the same as the law of this State and the common law, appellant, in taking possession of the assets of intestate, and paying the debts of intestate out of said assets in North Carolina, made himself executor *de son tort* in that State. *Howell* v. *Smith*, 2 McCord, 516; *Givens* v. *Higgins*, 4 McCord, 286; Gen. Stat., § 1905; 2 Laws. R. R. & P., § 983. Appellant's claim to be allowed, in his accounting in South Carolina, credit for the payments made in North Carolina, rests upon the assumption that he, as the administrator of intestate in South Carolina, his domicil, had the right to collect and disburse the money in North Carolina; or that his acts in North Carolina made him executor *de son tort* of intestate's estate in that State, and that whatever he did as executor *de son tort* was proper and right. To make a party liable as executor *de son tort*, he must be sued as executor. *Gregory* v. *Forrester*, 1 McCord's Ch., 326; and there is no such suit in this State against appellant. The litigation in North Carolina, which the probate judge says is about to be started, may be against this appellant as executor *de son tort*. An executor *de son tort*, as the term implies, is a trespasser, and it is an offence against the laws of the country in which the trespass is committed. How could a court in South Carolina acquire juris-

diction in this case, when the acts complained of were done in North Carolina, and the property meddled with is not now, and never was, within the territorial limits of this State?

Does plaintiff's appointment as administrator justify his acts in North Carolina? Generally speaking, and without attempting to state the exceptions to the rule, when a person dies intestate, owning personal property in the country of his domicile as well as in a foreign country, administration is had in both countries. The administration taken out in the country in which intestate resided is called the domiciliary or principal administration. It is the duty of such an administrator to collect the assets of the estate, pay the debts, if any are due, and distribute the remainder among the distributees of the intestate. The administration in the foreign country is called auxiliary or ancillary, and the duty of such an administrator is to collect the assets of the estate, and pay the debts due by intestate, especially debts due to citizens of that country. Each country claims and exercises the right to see that debts due to its citizens are paid before the assets of the estate are taken out of its jurisdiction. After the debts are satisfied, the ancillary administrator, under the law of nations, resting upon comity and broad principles of justice, may transmit the residuum to the administrator of the domicile, to be there disposed of according to the law of the domicile. Story Confl. Laws, 851, § 514, also page 840, § 512; 1 Woer. Am. Law Adm., 375, § 167; *Tucker* v. *Condy*, 10 Rich. Eq., 12; *Cureton* v. *Mills*, 13 S. C., 430; *Graveley* v. *Graveley*, 25 *Id.*, 2; 3 Wms. Ex'rs, § 1664; *Dial* v. *Gary*, 14 S. C., 573; *Stevenson* v. *Dunlap*, 33 *Id.*, 350.

Appellant contends, that inasmuch as the North Carolina debtor or debtors voluntarily paid their indebtedness to him, he had the right to receive the same, and to apply it to the indebtedness of his intestate. In the leading case of *Wilkins* v. *Ellett*, 9 Wall., 740, the law is stated as follows: "A voluntary payment of a debt to a foreign administrator held good as against the claim of an administrator duly appointed at the domicile of the debtor, in which last place the debt was paid, *there having been no creditors of the intestate in this last place, nor any persons there entitled as distributees.*" (Italics ours.) This is

the law in South Carolina. *Dial* v. *Gary*, 14 S. C., 582. In the case before the court, it does appear that there was a creditor of intestate in North Carolina, and that appellant knew it; for as soon as he collected the money in North Carolina, he paid it to a creditor of intestate in that State. There is no evidence that there are no other creditors of intestate in North Carolina, while there is evidence that there are other creditors there; indeed, the "Case" says that a suit is about to be begun against the estate of intestate in North Carolina. Again, it does not appear that there are no persons in that State entitled to the property as distributees.

It follows, therefore, that there was no error in disallowing the payments made in North Carolina on debts due there. This being so, appellant should not be charged in his accounts with any collections made from assets in that State, and the accounts should be recast accordingly when the accounting ordered by the Circuit Judge is had.

The second exception is: "Because his honor erred in not allowing plaintiff credit in his accounts as administrator for payment of three hundred and thirteen 65–100 dollars upon open accounts at different times." His honor did not disallow the entire item of $313.65, stated to have been paid "on open accounts at different times," but did disallow so much of that sum, viz., $313.65, as was "paid upon open accounts in North Carolina." We have already considered these North Carolina transactions, and these payments stand upon the same footing as the payments made to Miss Woodfin. As appellant, in the recasting of the accounts, will not be charged with collections made in North Carolina, we must overrule this exception.

Third exception: "Because, in any event, his honor erred in not allowing the plaintiff credit in his accounts as administrator for the payments made to Miss Woodfin, and the payments on the North Carolina accounts, to the extent that he allowed plaintiff credit for the payments mentioned in the I., II., IV., V. and VI. and part of the VII. exceptions to probate judge's decree." We must overrule this exception. Under the circumstances of this case, we agree with the Circuit Judge, that the Probate Court of Newberry had no jurisdiction as to appellant's

acts in North Carolina, either to charge or credit him with assets received in that State.

The fifth exception is: "Because his honor erred in not allowing plaintiff, as administrator aforesaid, credit in full for those payments made on demands which originated by contract with the said administrator as part of the expenses incurred in the administration of the estate of the said deceased, and which was disallowed by the probate judge." The "Case" contains no statement of "expenses incurred" by plaintiff in his administration of the estate, and no ruling, even referring to such "expenses," has been called to our attention, nor does it appear in the "Case." This exception is overruled.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

Plaintiff filed a petition for rehearing, upon which the following order was endorsed June 30, 1893,

PER CURIAM. We have carefully examined the petition for rehearing hereto attached, and finding that no material fact or important principle of law has either been overlooked or disregarded, there is no ground for a rehearing. From the fact that the judgment of the Circuit Court has been simply affirmed without qualification or modification, the appellant seems to apprehend that in restating the accounts of the administrator, as directed by the decree of the Circuit Judge, the charges against him for money collected in North Carolina may not be stricken from the account. We do not think there is any ground for such an apprehension, as this court, in its opinion, distinctly declared that in recasting the accounts of the administrator, he must not be charged with any money collected by him in North Carolina. But to relieve any doubt upon the subject, it is now ordered that any charges which may have been made against the administrator for money collected by him in North Carolina, shall be stricken from the account when restated under the order of the Circuit Judge.

It is due to this court to add that the difficulty apprehended by appellant arises not from any fault or omission in the opinion

of this court, but from the fact that it does not distinctly appear in the "Case" that the administrator had ever been charged, *in his accounting before the probate judge,* with the money collected in North Carolina, though there is a statement that the administrator *in his return* had charged himself with such money, and from the further fact that while there were exceptions to the disallowance of the *payments* made by the administrator to the North Carolina creditors, there was no exception to the *charges* against the administrator for the money collected in North Carolina. When, therefore, this court, concurring with the Circuit Judge in disallowing the credits for the payments made to the North Carolina creditors, affirmed the judgment below, out of abundance of caution, and as a matter of simple justice to the administrator, it was expressly directed that any charges which may have been made against him for money collected in North Carolina should be stricken from the account.