### 7804
#### H. J. BAKER & BRO. v. JOHN DOE.

ATTACHMENT—DEBTOR AND CREDITOR.—A nonresident creditor cannot attach in this State freight money in the hands of his agent here due a nonresident defendant steamship company in an action on a claim of the plaintiff in a foreign State against the steamship company arising in a foreign State.

Before MEMMINGER, J., Charleston, May, 1910. Reversed.

Action by H. J. Baker & Co. against John Doe and Richard Roe, unknown owners of steamship "Powhatan." From order refusing to vacate attachment and set aside service of summons, defendants appeal.

*Messrs. Bryan & Bryan* and *Huger & Wilbur,* for appellant. *Mr. Huger* cites: *No property belonging to defendants has been attached:* Hunt on Tender, par. 362, 454; 41 Am. Dec. 914; 23 Mo. 281; 1 Rich. 27; 12 Rich. 202; 1 Strob. 239; 8 Vt. 190; 3 Sneed 379; 45 N. H. 168; 12 Cuth. 137; 20 Ind. 67; 7 Gray 491; 23 S. E. 702; Drake on Attach. pars. 245-7. *No debt was attached:* 20 L. R. A. 118; 37 Neb.

849; 2 N. & McC. 323; 2 Hill 425; 6 S. C. 466; L. R. 2 E. & I. Appl. 239; 93 N. Y. 592; 34 N. E. 823; 29 L. R. A. 429; 55 Am. Rep. 122; 66 L. R. A. 606; 14 L. R. A. 562; 70 Fed. 573; 44 L. R. A. 115; 42 L. R. A. 283; 40 N. Y. Sup. 687; 14 Ency. 803; 36 L. R. A. 640; 83 N. Y. Sup. 572; 42 S. E. 383; 42 S. E. 385; 120 Ga. 983; 13 Met. 471; 6 Rich. 171; 6 S. C. 446; 1 S. C. 158; 20 Cyc. 986; 14 Ency. 740; Drake on Attach., sec. 465; 2 Dyer 196b; 35 Penn. St. 22; 51 Me. 370; 52 Me. 592; 60 Me. 172; 6 Ia. 244; 12 R. I. 119; 4 B. & A. 646; 85 Fed. 559; 64 Pac. 623; 55 N. H. 172; 14 N. H. 129; 4 Ohio Dec. 208; 1 Strob. 239; 8 Vt. 202; 5 Conn. 117; 6 Rich. 171; Drake on Attach., secs. 532-5; 2 Wade on Attach., sec. 442. *Levy is excessive:* 31 S. C. 301; 21 S. C. 583; 31 L. R. A. 425; 85 S. C. 114; 32 S. C. 155; 19 S. C. 560; 21 S. C. 221; 26 Ga. 577; 48 Md. 354; 16 S. W. 787; 47 S. W. 740; 35 Md. 294; 59 Tex. 300; 82 Tex. 537; 2 So. 719. *Defendant is not identified:* 32 S. C. 155; 31 S. C. 36; 6 S. C. 169; 10 S. C. 467; 13 S. C. 478; 24 S. C. 196; 31 S. C. 444; 85 S. C. 114.

*Messrs. Mitchell* and *Smith,* contra, cite: *A debt is attachable in the hands of the debtor:* 54 S. C. 582; 76 S. C. 349. *Situs of debt is domicile of debtor:* 54 S. C. 582; 76 S. C. 349; 67 N. Y. Supp. 763, 174 U. S. 710; 33 At. 147; 29 S. W. 1010; 57 N. E. 337; 19 S. W. 21; 30 S. E. 348; 20 Cyc. 1037; 75 Am. Dec. 502; 50 Minn. 405; 127 Mo. 242; 138 N. Y. 209; 85 Wis. 468; 83 N. Y. Sup. 572. *Variance between affidavit and complaint:* 69 N. W. 973; 29 S. W. 77; 33 S. W. 312; 49 S. W. 706, 257; 78 Ill. App. 460; 43 S. W. 932; 3 Ency. P. & P. 28; 85 S. C. 125; 78 S. C. 22; 62 S. C. 364; 78 S. C. 20; 62 S. C. 353; 93 U. S. 163; 51 Fed. 130; 49 Fed. 333; 22 Fed. 61. *Verification on information:* 70 S. C. 508; 6 S. C. 169; 81 S. C. 36; 135 U. S. 304; 3 Ency. P. & P. 26; 70 S. C. 501; 31 S. C. 46; 31 S. C. 36; 6 S. C. 169; 10

S. C. 469; 13 S. C. 478; 21 S. C. 588; 24 S. C. 202; 27 S. C. 131; 31 S. C. 307; 4 Cyc. 480, 482; 3 Ency. P. & P. 26.

March 6, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from two orders—one refusing to vacate an attachment, and the other refusing to set aside the service of summons.

The grounds upon which the motions, for said orders were made, were the same.

The affidavit of Theodore J. Simmons, upon which the warrant of attachment was issued, was as follows:

1. "That he is the resident agent and representative of Frank Morse Smith and Wm. H. Gelshennen, copartners carrying on business under the name and style of H. J. Baker & Bro., with their principal office in the city and State of New York, and were at the times hereinafter mentioned, and are now, copartners as aforesaid.

2. "That John Doe and Richard Roe are fictitious names used to denote the unknown owners or charterers of the British Steamship 'Powhatan' defendants herein who were in possession of the said steamship, 'Powhatan' on the voyage herein referred to and who are entitled to the freight for said voyage, and that said defendants are justly and truly indebted to the plaintiffs in the sum of seven hundred and twenty-four 07-100 dollars, as follows: That said Steamship 'Powhatan' through its master and agent, delivered its bill of lading for 1,727,040 pounds of tartar pomac meal in good condition, in bags to be transported from Europe and delivered to plaintiffs at Charleston, State aforesaid, in like good order and condition, but said steamship failed to deliver same, but only delivered 1,647,088 pounds, being a shortage of 79,952 pounds; the value of which shortage, so failed to be delivered is $703.57; that in addition thereto said steamship failed to deliver certain of said meal in bags as delivered to it and plaintiffs were com-

pelled to furnish sacks and sack same at the cost to plaintiffs of $20.50; and that the defendants as owners or charterers of said steamship 'Powhatan' are indebted to plaintiffs as aforesaid in the sum of $724.07.

3. "That the plaintiffs have commenced an action in this Court, by the issuing of the summons, hereto annexed, against the said defendants upon the cause of action above stated.

4. "That the defendants are not residents of this State, but as deponent is informed and believes, reside in the Kingdom of Great Britian.

5. "That the defendants have property within this State, to wit, moneys due the said steamship 'Powhatan' for freight on said cargo shipped to the plaintiffs."

The sheriff certified, that he attached the sum of $1,012.29, in the hands of Theo. J. Simmons. Attached to the warrant, is a letter from Theo. J. Simmons to the sheriff, in which he says: "Referring to your warrant of attachment, served on me this afternoon, I hold, subject to such attachment, the sum of $1,012.29, the amount of freight withheld from S. S. 'Powhatan.'"

The defendants' attorneys made a motion, to vacate the warrant of attachment on certain grounds, the first of which is embodied in the following exception:

"Because his Honor, Judge Memminger, erred in refusing defendants' motion, for an order vacating and setting aside, the said warrant of attachment issued herein, on the ground that said warrant, was improvidentally issued, in that the title to the property attached, (if any was attached) is in the plaintiffs, and the Court is, therefore, without jurisdiction."

In the case of *George* v. *Am. Gin. Co.*, 46 S. C. 1, 24 S. E. 41, 32 L. R. A. 764, the facts were as follows: "The plaintiff who resides in the city of New York, by formally executed power, constituted William C. Brown, a resident of this State, her attorney in fact to commence this action,

and to take all necessary steps, to obtain a warrant of attachment, against the defendant company, which is a foreign corporation, doing business in the town' of Beaufort, South Carolina.

"In pursuance of this power, the said W. C. Brown, on the 30th day of July, 1895, procurred a summons and complaint to be issued in the name of the plaintiffs, against the defendant company, on a certain note alleged to have been executed, in favor of the plaintiff; and, on the same day, sued out a warrant of attachment which was levied upon the property of the defendant company, upon the ground that it was a foreign corporation."

The Court in discussing the case uses the following language: "If as distinctly appears in the 'Case' Wm. C. Brown was acting as attorney in fact of the plaintiff, in commencing this action, and suing out the warrant of attachment, he was *pro hoc vice* the plaintiffs, and, therefore, the service upon him was practically the same, as if the papers had been served upon the plaintiff, in her own proper person. * * * The question, then, resolves itself into an inquiry, whether a person can legally commence an action, against a foreign corporation, of which he happens to be an officer or agent, *by serving himself with the process or summons, necessary to commence such action.* So far as we are informed, there is no authority in this State, upon the point; and we do not think any is needed, to show that such a proposition, so utterly at variance with any proper conception, of the due and orderly administration of justice, cannot for a moment be entertained. To concede such a proposition, would open the door to the grossest fraud, which would be a reproach to the administration of justice. * * * We cannot assent to a proposition which, if established would afford such an easy mode of perpetrating frauds. Counsel for appellant has, however, cited us to two cases from other States, which seem to support fully, the view which we have adopted. *Buck* v. *Ashvelot Manfg. Co.,* 86

Mass. 357, and *Rehm* v. *German Ins. & Sav. Institution,* 25 N. E. Rep. (Ind.) 173.

"We think, therefore, that the Circuit Judge erred, in refusing the motion to set aside the service of the summons and complaint in this action, and, consequently, that he erred in refusing to vacate the attachment."

The case of *Brown* v. *Am. Gin. Co.,* 46 S. C. 1, 24 S. E. 41, was heard in connection with said case, and, although the facts were not identical, the same principle was applied.

The reason for the rule is, also thus stated, in *Rice* v. *Sharpleigh Hardware Co.,* 85 Fed. Rep. 559. "On principle it will readily occur to almost any one, that to allow a plaintiff in attachment, to garnish himself as a debtor to his creditor, whom he made a defendant for that purpose, is a distortion of the process of garnishment from its ordinary uses, and in itself suggests, that some ulterior or sinister purpose, is to be accomplished. If two parties owe each other, the two debts, so far as they go, set themselves off; and from time immemorial, the courts of law have afforded them ample opportunity, to set them off against each other, whenever either brings an action at law."

We of course, do not wish to be understood as intimating, that there was any intention, to distort the process of attachment in the case under consideration.

Another reason why there was error in refusing to vacate the warrant of attachment, is, that the debt was not attached at the domicile of the debtor.

The rule is thus stated in the case of *Chicago etc. Ry. Co.* v. *Sturm,* 174 U. S. 710: "The primary proposition is that the situs of a debt is at the domicile of a creditor, or, to state it negatively, it is not at the domicile of the debtor. The proposition is supported by some cases; it is opposed by others. Its error proceeds, as we conceive, from confounding debt and credit, rights and remedies. The right of a creditor and the obligation of a debtor are correlative

but different things, and the law in adapting its remedies for or against either, must regard that difference. * * *

"The idea of locality of things, which may be said to be intangible, is somewhat confusing, but if it be kept up, the right of the creditor and the obligation of the debtor, cannot be the same, unless debtor and creditor, live in the same place. But we do not think it necessary, to resort to the idea at all, or to give it important distinction. The essential service of foreign attachment laws, is to reach and arrest the payment of what is due, and might be paid to a nonresident, to the defeat of his creditors. To do it he must go to the domicile of his debtor, and can only do it, under the laws and procedure in force there. This is a legal necessity, and considerations of *situs* are somewhat artificial. If not artificial, whatever of substance there is, must be with the debtor. He, and he only, has something in his hands. That something is the *res,* and gives character to the action, as one in the nature of a proceeding *in rem. Mooney* v. *Buford and George Mfg. Co.,* 2 Fed. Rep., 32; Conflict of Laws, sec. 549, and notes.

"To ignore this, is to give immunity to debts, owed to nonresident creditors, from attachment by their creditors, and to deny necessary remedies. A debt may be as valuable as tangible things. It is not capable of manual seizure, as they are, but no more than they can it be appropriated, by attachment, without process and the power to execute the process. A notice to the debtor must be given, and can only be given and enforced, where he is. This, as we have already said, is a necessity, and it cannot be evaded, by the insistence upon fictions or refinements about *situs,* or the rights of the creditor. Of course, the debt is the property of the creditor, and because it is, the law seeks to subject it, as it does other property, to the payment of *his* creditors. If it can be done in any other way than by process against and jurisdiction of his debtor, that way does not occur to us."

In the said case, the Court quotes with approval, the
following language from *Wyman* v. *Halstead,* 109 U. S.
656 : "The general rule of law is well settled, that, for the
purpose of founding administration, all simple contract debts
are assets, at the domicile of the debtor."

To the same effect is the case of *Dial* v. *Gary,* 14 S. C.
573, in which it was held, that "a grant of administration,
vests in the administrator, only such movable property, as
may be found within the territorial limits of the govern-
ment, which grants it; but choses in action, are *bona nota-
bilia* of the State, where the debtor resides, and are the sub-
ject of administration there." (Syllabus.) The Court
stated the question to be, "whether the plaintiff, (appellant),
being the holder of a bond, purchased by him, from a domi-
ciliary administrator abroad, has the right and legal capac-
ity, to sue said bond in this State, where the debtor resides,
and, where he the appellant, resides." In discussing this
question the Court said : "The bond sued on, is, technically,
a chose in action. Is a chose in action property, or merely
the representative of property? Is it the substance or
shadow? And, where the obligor and obligee, reside in dif-
ferent States, is the property in the bond, to be regarded as
situated in the domicile of the debtor, or that of the creditor?
If the bond followed the person of the debtor, and, is to be
considered as *bona notabilia,* in the State where he resides,
then, the demurrer was properly sustained. If, however, it
followed the person of the creditor, and is to be considered
property in Massachusetts, then, if the laws of that State
have been complied with, the appellant's title would be good.
The term *chose* signifies *thing* or property. In law, it is
applied to personal property, as choses in possession, are
such personal things, of which one has possession. Choses in
action, are such as the owner has not possession, but merely
a right of action, for their possession. 2 Bl. Com. 389, 397;
1 Chit. pr. 99. A chose in action, then, embraces two ideas:
first, a visible tangible thing, and, second, the right to sue for

and recover that thing. These are separate and distinct elements; and the one may be situated in one locality, and the other in another.

"In the case now before the Court, the chose in action, is situated in South Carolina, and the evidence of the right to sue, at the death of Burke, was in Massachusetts, but that right could not be exercised in that State, even by Burke himself, at least, so long as the debtor continued in this State. In this view, both the thing and the right to sue for it, belonged to South Carolina, and, according to strict law, ought to be subject to administration here otherwise, the great object of each State government, retaining control over the property of an absent decedent, would be defeated entirely." It will thus be seen, that tangible property is subject to attachment, wherever it may be located, but that a debt can be attached only, at the domicile of the debtor.

The money in the hands of the agent Theo. J. Simmons, was attached as a *debt,* and not as tangible property. But even if it be regarded as tangible property, the defendants did not have such interest in it, as rendered it subject to attachment.

"A fundamental principle is, that an attaching creditor, can acquire no greater right in attached property, than the defendant *had at the time of the attachment.* If, therefore, the property be in such a situation, that the defendant has lost his power over it, or has not yet acquired such interest in, or power over it, as to permit him to dispose of it adversely to others, it cannot be attached as his debt." Drake on Attachment, sec. 245.

In the case of *Pressly* v. *McDonald,* 1 Rich. 27, the defendant McDonald, issued a foreign attachment and levied on Harriet, one of the negroes given to Nancy Calhoun as the property of her husband, W. Calhoun, the absent debtor. The Court said: "The only question in the case is whether William Calhoun had, legally vested in him, the exclusive title to the negroes in question. His right depends on the

sufficiency of the assent of the executor.  It was competent for Calhoun, to have received in his own right, by virtue of his marriage, the legacy bequested, in terms, to his wife.  It was in the power of the executor, however, to have withheld his assent, for the benefit of his wife, until her rights should be recognized and secured by a court of equity."  Thus showing that the negro could not be attached as the property of the husband until he had reduced it to possession.

In the case of *Burrell* v. *Letson,* 1 Strob. 239, it was held, that one who has been constituted attorney in fact, to receive the money of an absent debtor, but refuses to do so, and under his power, appoints another to receive it, may in his return to a writ of attachment, properly deny that he has any moneys, goods, etc., of the absent debtor.  The Court used this language: "It has been argued, that in as much as Mr. Petigru, received from the defendant, a power of attorney to receive the money, but did not choose to receive it, and constituted Mr. Porcher, by the authority contained in the same power, the attorney of the defendant, to receive the money, which he did, he, (Mr. Petigru) is to be considered in law, as having the fund in his hands. * * *  Can Mr. Petigru, be regarded as having the money of the defendant, *in his hands, power, or possession?*  Certainly not.  He might, if he would have obtained the possession, but the exercise of his power to receive, was necessary, to bring the fund actually, or legally, into his possession.  This he did not do.  Mr. Porcher's receipt of the money, cannot be considered as Mr. Petigru's.  For the maxim *qui facit pro alium facit per se,* does not apply between them."

We do not deem it necessary, to cite other authorities, to sustain this proposition.

Another reason still, why a plaintiff should not be allowed to attach money or a debt, in his hands, is, because he occupies the position of a creditor, in possession, and his rights are paramount to the rights of an attaching creditor.

*Seabrook* v. *Rose,* 2 Hills Ch. 553; *Mitchell* v. *Byrne,* 6 Rich. Eq. 171.

Having reached the conclusion, that this exception, which raises a jurisdictional question, should be sustained, the questions presented by the other exceptions, are not properly before this Court for consideration. *Wren* v. *Johnson,* 62 S. C. 553.

It is the judgment of this Court, that the orders of the Circuit Court be reversed.