### 12212

BEIDLER *ET AL.* v. SOUTH CAROLINA TAX COMMISSION

(160 S. E., 264)

*Messrs. Arthur B. Schaffner* and *Hendersons & Salley,* for appellants.

*Messrs. John M. Daniel, Attorney General, J. Fraser Lyon* and *N. A. Turner,* for respondent.

May 27, 1927.

The opinion of the Court was delivered by Mr. C. J. Ram-AGE, Acting Associate Justice.

This is an appeal from the decision of South Carolina Tax Commission imposing an inheritance tax on certain assets of the estate of Francis Beidler, deceased.

On March 4, 1924, Francis Beidler, a resident of Chicago, in the State of Illinois, died in said State, leaving of force his last will and testament, which was duly probated in the Probate Court of Cook County, Ill., and Francis Beidler, II, and George Engelking thereafter duly qualified and are now acting as executors of said estate. At the time of his death, the said decedent owned, among other personal property, the following, as to which an inheritance tax has been assessed by the South Carolina Tax Commission, to wit: 8,000 shares of the capital stock of Santee River Cypress Lumber Company, a South Carolina corporation, which, by agreement reached between the tax commission and the attorneys for the executors has been valued for the purpose of the assessment of the South Carolina inheritance tax at $204.00 per share, or $1,632,000.00. The balance of the stock in said lumber company is owned by the widow and children of the decedent, Mrs. Elizabeth Beidler, owning 2,000 shares, Francis Beidler, II, 2,500 shares, and Elizabeth Beidler, Jr., 2,500 shares.

In addition thereto, said Santee River Cypress Lumber Company was indebted to the decedent at the time of his death in the sum of $556,864.22, for advances theretofore made by him to said company, and in the sum of $64,672.00 for dividends previously declared by the said company on the shares of stock above described. Said indebtedness was an open unsecured book account, which was entered upon the books of the Santee River Cypress Lumber Company, kept at Eutawville, S. C. Mr. Beidler also kept a complete set of personal books in Chicago, upon which appear entries

of said amounts being due him by Santee River Cypress Lumber Company, except the item of $64,672.00 dividends.

The executors of the said estate filed with the South Carolina Tax Commission, as required by the Inheritance Tax Law of the State of South Carolina (Act February 23, 1922 [32 St. at Large, p. 800]), an affidavit, setting out in said affidavit all of the above assets, but specifically claiming and submitting that the two items of $556,864.22 and $64,672.00 above referred to were not on March 4, 1924, taxable under the laws of South Carolina then existing.

On July 25, 1925, the South Carolina Tax Commission levied an inheritance tax upon all of the above assets amounting to a tax of $144,106.10.

The executors filed with the tax commission Cahill's Revised Statutes of the State of Illinois, Paragraphs 10, 11, 12, 13, of Chapter 41 (see Cahill's Rev. St. 1929, c. 41), showing the right of a widow to renounce a will of a husband in the State of Illinois, and her right, after so renouncing, to take absolutely one-third of all the personalty of his estate; the executors also filed a certified copy of Mrs. Francis Beidler's renunciation of the will of her husband, and her election to take her legal share under the statute. In accordance therewith, the South Carolina Tax Commission have in distributing the estate in South Carolina, for the purpose of the assessment of the South Carolina inheritance tax, assigned one-third of the estate in South Carolina to Mrs. Beidler; from which no appeal is taken.

The value of the estate outside of South Carolina has not been ascertained by the South Carolina Tax Commission, but, for the purpose of this appeal, it is agreed that it was large and valuable, probably approximating $1,000,000.00

The following are the issues:

1. Are the items above referred to, of $556,864.22 and $64,672.00, taxable herein?

2. Is the Federal estate tax allowable as a deduction herein?

3. Are the executors entitled to an exemption, in favor of the Francis Beidler charitable trust fund, of $6,000.00 or only $200.00?

4. Does 10 per cent. interest on the South Carolina inheritance tax start to run on July 31, 1925, or on January 28, 1926?

We shall now consider the first question as to the tax ▮▮ on the debt and on the dividends. First as to the debt: "Upon the other hand, it is very generally held in this country, unless the terms of the statute forbid, that a succession or inheritance tax is payable in respect of the personal property belonging to the estate of a nonresident decedent, where such property, *or the evidence thereof,* is physically present within the taxing state, at least, if not there for a mere temporary presence." Note to 46 L. R. A. (N. S.), at page 1168, citing *Blackstone v. Miller,* 188 U. S., 189, 23 S. Ct., 277, 47 L. Ed., 439, and Gallup's Appeal, 76 Conn., 617, 57 A., 699, and other cases.

"Bonds of a foreign corporation, as well as bonds and certificates of stock of domestic corporations, when deposited in a safe-deposit vault within the State, although owned by a nonresident, are 'property within the State,' within the meaning of the transfer tax Act of 1892." In re. *Estate of Whiting,* 150 N. Y., 27, 44 N. E., 715, 34 L. R. A., 232, 55 Am. St. Rep., 640.

"Money of a nonresident, deposited by him in a bank within the State, although commingled with trust funds in an account opened by him as trustee, constitutes 'property within the State,' within the meaning of the New York transfer tax Act of 1892, which includes property of a nonresident decedent if within the State." *In re. Estate of Houdayer* (Deed), 150 N. Y., 37, 44 N. E., 718, 34 L. R. A., 235, 55 Am. St. Rep., 642.

The Court goes on to say: "What was the real thing—the essence of the transaction—that gives rise to this controversy? The decedent brought his money into this State, deposited it in a bank here, and left it there until it should suit his convenience to come back and get it. * * * It was an investment in this State, subject to attachment by creditors. If not voluntarily repaid, he could compel payment through the Courts of this State. The depositary was a resident corporation, and the receiving and retaining of the money were corporate acts in this State. Its repayment would be a corporate act in this State. Every right springing from the deposit was created by the laws of this State. Every act out of which those rights arose was done in this State. In order to enforce those rights, it was necessary for him to come into this State. Conceding that the deposit was a debt, conceding that it was intangible, still it was property in this State, for all practical purposes, and in every reasonable sense within the meaning of the transfer tax Act. *In re. Romaine's Estate*, 127 N. Y., 80, 89, 27 N. E., 759, 12 L. R. A., 401."

Thus the Legislature intended to repeal the maxim, "*Mobilia personam sequuntur*," so far as it was an obstacle.

"The words 'being in this State' in the statute imposing a collateral inheritance tax upon 'all assets * * * of every kind, passing from any person who may die seized and possessed thereof, being in this State,' refer to the property and not to the person; and property actually within the State, although for other purposes it may be treated as constructively elsewhere because of the owner's nonresidence is subject to the tax." *State v. Dalrymple*, 70 Md., 294, 17 A., 82, 3 L. R. A., 372.

We herewith submit some quotations from the *case that really determines this appeal, Blackstone v. Miller*, 188 U. S., 189, 23 S. Ct., 277, 47 L. Ed., 439:

"A State may tax the transfer, under the will of a non-resident of debts due the decedent by its citizens. The im-

position of a tax, under the New York inheritance tax law, on the transfer, under the will of a nonresident, of debts due the decedent by residents of that State, does not violate the 14th Amendment to the Federal Constitution.

"The property consisted of a debt of $10,092.24, due to the deceased by a firm, and of the net sum of $4,843,456.72, held on a deposit account by the United States Trust Company of New York. * * * In view of the State decisions it must be assumed that the New York statute is intended to reach the transfer of this property if it can be reached. * * * The domicil, naturally, must control a succession of that kind. Universal succession is the artificial continuance of the person of a deceased by an executor, heir, or the like, so far as succession to rights and obligations is concerned. It is a fiction, the historical origin of which is familiar to scholars, and it is this fiction that gives whatever meaning it has to the saying *mobilia sequuntur personam*. But being a fiction it is not allowed to obscure the facts, *when the facts become important*. * * * If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the State of New York, then New York may subject the transfer to a tax. * * * But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. The principle has been recognized by this Court with regard to garnishments of a domestic debtor of an absent defendant. * * * What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. Most of us do not commit crimes, yet we nevertheless are subject to the criminal law, and it affords one of the motives for our conduct. So, again, what enables any other

than the very creditor in proper person to collect the debt? The law of the same place. To test it, suppose that New York should turn back the current of legislation, and extend to debts the rule still applied to slander, that *actio personalis moritur cum persona.* * * * Power over the person of the debtor confers jurisdiction, we repeat. And this being so, we perceive no better reason for denying the right of New York to impose a succession tax on debts owned by its citizens than upon tangible chattels found within the State at the time of the death. The maxim, *mobilia sequuntur personam,* has no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way."

The following quotations are from L. R. A., 1916-A, page 895, et seq.:

"The State Court (Re Blackstone [1902], 69 App. Div., 127, 74 N. Y. S., 508, affirmed without opinion in 171 N. Y., 682, 64 N. E., 1118), in holding that the deposits represented 'property within the State' within the New York statute then in force. * * *

"That the *New York cases* cited in the note in 46 L. R. A. (N. S.), 1168 *et seq.,* holding that debts due to estates of nonresidents were subject to a succession tax, did not turn upon the residence of the debtor, but rather upon the physical presence within the State of the evidences of the property, is apparent from the discussion in those cases. The point is clearly illustrated in *Re Tiffany* (1911), 143 App. Div., 327, 128 N. Y. S., 106, affirmed in 202 N. Y., 550 [95 N. E., 1140], which is affirmed [*Wheeler v. Sohmer*] in 233 U. S., 434, 34 S. Ct., 607, 58 L. Ed., 1030, holding that notes belonging to a nonresident testator, some made by residents of New York, and others by nonresidents, were subject to the payment of the tax because at the time of the owner's death, and for some time prior thereto, they were kept in a safe deposit box in New York, the Court observing at the close of the opinion that it is possible that the two

classes should be treated differently, but that it did not seem that the residence of the debtor changed the character of the property, or determined whether it was liable to an inheritance tax.  *  *  *  The case of *Re Adams* (1915), [167 Iowa, 382, 149 N. W., 531], L. R. A., 1915-C, 95, holding that notes secured by mortgages upon real estate in Iowa were subject to the Iowa collateral inheritance tax upon the ground that they had a 'business situs' in the State by reason of their use in the business of loaning and reloaning money, and that such situs was not destroyed by their removal by the local agent two days before the death of the owner in order to defeat the tax.  *  *  *  Debts, due a nonresident's estate from residents of Minnesota, including those evidenced by promissory notes, were held in *State ex rel. Graff v. Probate Court* [128 Minn., 371, 150 N. W., 1094], L. R. A., 1916-A, page 901, to be subject to a succession tax under the Minnesota statute providing for the imposition of a tax when a transfer is by will or intestate law of property 'within the State or within its jurisdiction,' and the decedent is a nonresident of the State at the time of his death. The Court declares generally that 'where the Courts of the debtor's domicil have jurisdiction of the debt for purposes of probate administration, it goes without saying that they have jurisdiction for the purposes of enforcing a succession tax.' So, in *State ex rel. Knox County v. Bunce* (1915), 187 Mo. App., 607, 173 S. W., 101, it was held that an indebtedness due on a note from a resident  *  *  *  was within the Missouri statute declaring that all property 'within the State' belonging to the estate of a nonresident shall be subject to the tax."

*Dodge County v. Burns,* 89 Neb., 534, 131 N. W., 922, 35 L. R. A. (N. S.), 877, seems to hold that simple debts were different from an indebtedness represented by a paper writing held in another State, on the ground that simple debts would support an administration of the estate of the nonresident.

"Personal property of a nonresident invested or habitually kept within the State is subject to the collateral inheritance tax imposed by Laws 1887, Chap. 713, § 1, on property of a resident which passes by will or by the Intestate Laws of the State, or, if the decedent was a nonresident, on property *within the State.*" *In re Romaine*, 127 N. Y., 80, 27 N. E., 759, 12 L. R. A., 401.

The Court says in discussing the case: "It was held otherwise by the Court of Appeals of Maryland in *State v. Dalrymple*, 70 Md., 294 [17 A., 82], 3 L. R. A., 372, where the words 'being in this State' were declared to refer to the actual, and not to the constructive, situation of the property. In *Alvany v. Powell*, 2 Jones, Eq. [55 N. C.], 51, it was held that property, whether real or personal, situate in the State of North Carolina, but belonging to one domiciled and dying intestate in Canada, was subject to the succession tax imposed by a statute of said State. * * * Where, however, the money of a nonresident is invested in this State, as it was by Mr. Romaine in the bond and mortgage in question, and in the deposits made by him in the savings banks, or where the property of a nonresident is habitually kept even for safety, in this State, we think that the statute applies both in letter and spirit. Such property is within this State in every reasonable sense, receives the protection of its laws, and has every advantage from government, for the support of which taxes are laid, that it would have if it belonged to a resident. We think that a fair construction of the Act permits no distinction as to such property, based simply upon the residence of the deceased owner."

In *Wheeler v. Sohmer*, 233 U. S., 434, 34 S. Ct., 607, 58 L. Ed., 1030, it was held that the State of New York could, by proper law to that·effect, tax the transfer of notes in a safe deposit box in New York though the notes were made either by a resident of Chicago, secured by mortgages of Chicago lands to trustees in Illinois, or by a Virginia corporation.

We find the following in a case note to 4 L. R. A. (N. C.), pages 954 and 955: "In New York and some other states the tax is laid according to the principles both of domicil and of actual situs. It is apparent that, under such a statute, the tax is payable, not only in respect to debts due from nonresidents to residents, but also in respect to debts due from residents to nonresidents if the conditions essential to give them a local 'business situs' exists. * * * It may be remarked, in this connection, however, that it is competent for a state to assign a local situs, for the purpose of property taxation even, to credits belonging to a nonresident which have been reduced to a concrete form, and the evidences of which are held within the State, in the hands of an agent for the purposes of collection or renewal with a view to new loans and the carrying on of such transactions as a permanent business." *New Orleans v. Stemple,* 175 U. S., 309, 20 S. Ct., 110, 44 L. Ed., 174; *Bristol v. Washington County,* 117 U. S., 133, 20 S. Ct., 746, 44 L. Ed., 701; *State Assessors v. Comptoir National D'Escompte,* 191 U. S., 388, 24 S. Ct., 109, 48 L. Ed., 232; *Parmlee's Wharton Conflict of Laws,* 175, § 80 c.

We refer to the entire note found in 4 L. R. A. (N. S.) found on pages 953, 954, 955, as bearing on the question of the location of funds in a State as a business situs and which are under the jurisdiction of the State for the purposes of taxation, though the owner lives in another State.

The case of *Chicago, R. I. & P. R. Co. v. Sturm,* 174 U. S., 710, 19 S. Ct., 797, 43 L. Ed., 1144, holds: "A debt may be attached at the domicile of the debtor, though the creditor's domicile is in another State."

We think it may be safely said that this is the general law.

The Beidler estate depends upon the laws of South Carolina and our Court to protect this debt. The Tax Commission found this debt here, and there is no legal or proper showing made that the debt has ever been anywhere else;

the Tax Commission was well within the law in holding this debt liable for the inheritance succession tax.

In addition to the debt having an actual situs in South Carolina, the debt and dividend in question also had what is termed a "business situs" in this State. Both the debt and dividend were involved in the assets of Santee River Cypress Lumber Company; they were a part of its working capital and were no doubt left with the debtor company (in which Mr. Beidler was vitally interested and which he and his family owned *in toto*), to help and assist it along in its business. He was tremendously interested in the affairs of the large and extensive corporation, and was no doubt cheerfully willing to leave these two large amounts invested here to help make dividends for the company. But whatever his motive, the two amounts in question were here, and that is the end of the matter so far as we are concerned. It was being used by the company and was invested by it and was a part of it and allowed to remain so by Beidler himself who fixed its status. The Court cannot shut its eyes to the plain facts of this case, and their evident relations, so far as the real parties at interest are concerned. All of the debt was involved and the property invested in South Carolina.

To use the language of the *Blackstone case,* the State has "power over the person of the debtor" and "power over the person of the debtor confers jurisdiction."

The main question in this appeal is whether the Beidler estate is liable to the State for an inheritance tax upon a debt of $556,864.22, which the Santee River Cypress Lumber Company, a South Carolina corporation doing business near Eutawville, S. C., owed to Francis Beidler, a citizen of Chicago, at the time of his death, March 4, 1924. The debt was for advances in cash made by Beidler to the corporation, in which he and his family owned the entire capital stock. A similar question has arisen with reference to a claim of $64,672.00, the amount of dividends which had been declared upon Beidler's stock, but which had not been paid.

As we understand the case of *Fuller v. Tax Commission*, 128 S. C., 14, 121 S. E., 478, 482, read in connection with the case of *Blackstone v. Miller*, 188 U. S., 189, 23 S. C., 277, 47 L. Ed., 439, the test of the question whether a debt, represented by an open account, due by a resident of South Carolina to the estate of a decedent being administered in another State, is "property within the State," is thus expressed in the very lucid opinion of Mr. Justice Marion in the *Fuller case:* "May ancillary administration be compelled in the latter state [that is, the domicile of the debtor], *or may resort in some form to the laws of the latter State be necessary to secure recognition and confirmation of the title transferred by the intestate or succession* laws of the State of the domicile in order to complete the transfer in fact and make effectual the disposition of the property authorized by the law of the domicile? If so, we think, there is such a transfer of a nonresident decedent's 'property within the State,' seeking to impose the tax as may properly be taxed consistently with the theory of inheritance taxation." (Italics added.)

We do not see how there can be but one result from the application of this test. The debt was due by a South Carolina corporation doing business in this State; it was an asset of the decedent's estate *at the domicile of the debtor,* the South Carolina corporation; the title to the claim did not vest in the representatives of the decedent's estate until ancillary administration had been taken out in this State; recourse to the Courts and laws of South Carolina was therefore indispensable "to make effectual the disposition of the property authorized by the law of the domicile."

We do not think that there can be any doubt as to the proposition that the voluntary payment of the debt by the South Carolina corporation to the Beidler executors in Chicago would have been in order, without the appointment of an ancillary administrator in South Carolina; that their acquittance would have been a complete protection to the

South Carolina debtor, *Wilkins v. Ellett,* 108 U. S., 256, 2 S. Ct., 641, 27 L. Ed., 718, and authorities cited in the dissenting opinion of Mr. Justice Cothran in *Wolfe v. Bank,* 123 S. C., 208, 116 S. E., 451; but that is not the question; it is whether ancillary administration *may be compelled* in this State, or resort in some form to the laws of this State be necessary to secure recognition and confirmation of the title transferred by the intestate or succession laws of the State of Illinois. If the debtor declined to pay the debt, it is clear that ancillary administration in this State and a resort to its laws would be inevitable.

"The general rule of law is well settled that for the purpose of founding administration, all simple contract debts are assets at the domicile of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable." *Wyman v. Halstead,* 109 U. S., 654, 3 S. Ct., 417, 418, 27 L. Ed., 1068. See, also, to the same effect, *Dial v. Gary,* 14 S. C., 573, 37 Am. Rep., 737.

If then this be true, where is the title to the local assets? In *Stoddard v. Aiken,* 57 S. C., 134, 35 S. E., 501, the plaintiffs had qualified as executors of the will of a Georgia citizen, in Georgia; they brought suit in Barnwell County, this State, upon a note given by Aiken, a resident of Barnwell County, to their testator. The Court held that, as the executors *rested their title* to the note, and their right to maintain the action upon the appointment as executors by the Court of Georgia, which had no effect in this State, their complaint should be dismissed.

In *Heyward v. Williams,* 57 S. C., 235, 35 S. E., 503, 505, the action was by the plaintiff, as assignee of a note and mortgage upon land in Beaufort County, executed by the

defendant Williams to one Baldwin, a citizen of New York, whose executors, qualified there, had assigned the note and mortgage to the plaintiff Heyward. Upon demurrer to the complaint, the Court held that the title of the executors to the personal property of the testator was limited to the State line, saying: "It is true that they could cause probate to be made of their testator's will in this State, but until that was done they could not intermeddle with testator's property in this State. If they desired to recover upon any choses of action of their testator against parties residing in this State, they would be obliged to be clothed with the rights of executors *under State laws.* * * * But it is also now the settled law of this State that an assignment of a chose in action by an executor clothed with his office by the will, and the probate thereof in the surrogate Court of New York, *will not carry title* to such chose in action to an assignee, so that the assignee, in his own right, may by his action in our Courts recover from a defendant who resides in this State (South Carolina), what is due on the chose in action, without the executors who so assign and transfer to the plaintiff the chose in action owned by their testator while his domicile was in the State of New York shall first make probate of testator's will in our Courts."

In *Dial v. Gary,* 14 S. C., 573, 37 Am. Rep., 737, the action was by the plaintiff, as assignee of a note and mortgage upon land in Richland County, executed by the defendant Gary to one Burke, a citizen of Massachusetts, whose administrator, qualified there, had assigned the note and mortgage to the plaintiff Dial. Upon demurrer to the complaint, the Court held that the assignment was invalid for want of title to the note and mortgage in the administrator saying: "Now if the administrator of Asa Burke, appointed in Massachusetts, his domicile, had brought these actions, can there be a doubt that a demurrer would have been fatal? Or, if the property in question was movable, tangible property, such as horses, cattle, wares and merchan-

dise, located in this State at the time of the death of Burke in Massachusetts, could his administrator, appointed there, institute suit for the recovery of such property? The right to sue for the recovery of property springs from title. Without title no right of action can exist under the authorities referred to above. (*Carmichael v. Ray,* 1 Rich., 116, *Tillman v. Walkup,* 7 S. C., 60, *Richardson v. Gower,* 10 Rich., 109) *No title to such property could vest in a foreign administrator.* Neither would a foreign administrator have the power to sell or transfer such property, and for the same reason—the want of title."

The Court cites with evident approval the case of *Stevens v. Gaylord,* 11 Mass., 263, in which the Court held:

"If a foreigner, or a citizen of any other of the United States dies, leaving debts and effects in this State, these can never be collected by an administrator appointed in the place of his domicil." In that case the debtor had come into the state of the decedent's domicile and was personally served. The Court held that that did not affect the principle announced; and our Court commenting:

"This must have been upon the ground that the administration in Massachusetts does not give title, even in that State, to notes and other choses in action of deceased parties dying there, on persons in other states."

There the bond and mortgage were physically in possession of the administrator in Massachusetts. See, also, *Patterson v. Pagan,* 18 S. C., 584; *Cochran v. Fillans,* 20 S. C., 237; *Graveley v. Graveley,* 25 S. C., 1, 60 Am. Rep., 478; *Stevens v. Dunlap,* 33 S. C., 350, 11 S. E., 1017; *Jones v. Jones,* 39 S. C., 247, 17 S. E., 587, 802; *Pollock v. Association,* 48 S. C., 65, 25 S. E., 977, 59 Am. Rep.; 695; *Ayres v. Des Portes,* 56 S. C., 544, 35 S. E., 218; *In re Estate of Mayo,* 60 S. C., 402, 38 S. E., 634, 54 L. R. A., 660; *Bank v. Tax Com.,* 133 S. C., 406, 131 S. E., 142.

So it appears manifest that the debts in question are assets of the decedent's estate to be assembled and distrib-

uted by the Courts and laws of South Carolina the domicile of the debtor, and that even the title can only be established in the personal representative, by ancillary administration in the Courts and under the laws of this State; and as said by the New York Court of Appeals in the case of *In re Houdayer,* 150 N. Y., 37, 44 N. E., 718, 34 L. R. A., 235, 55 Am. St. Rep., 642: "Where the right, whatever it may be, has a money value, and can be owned and transferred, but cannot be enforced or converted into money against the will of the person owning the right, without coming into this state, it is property within this state for the purposes of a succession tax. Thus, the right in question is property, because it is capable of being owned and transferred. It is within this State, because the owner must come here to get it. It is subject to taxation because it is under the control of our laws."

In *Liverpool & London & Globe Ins. Co. of New York v. Orleans Assessors,* 221 U. S., 346, 31 S. Ct., 550, 553, 55 L. Ed., 762, L. R. A., 1915C, 903, there was involved the power of a state to tax premiums of insurance due by the residents to a nonresident insurance company, not evidenced by a written instrument. The company contended that a tax upon incorporeal things, such as abstract credits, not in concrete form and without tangible shape, violate the Fourteenth Amendment. The Court said: "The asserted distinction cannot be maintained. When it is said that intangible property, such as credits on open account, have their situs at the creditor's domicil, the metaphor does not aid. Being incorporeal, they can have no actual situs. But they constitute property; as such they must be regarded as taxable, and the question is one of jurisdiction. The legal fiction expressed in the maxim *mobilia sequuntur personam* yields to the fact of actual control elsewhere. And in the case of credits, though intangible, arising as did those in the present instance, the control adequate to confer jurisdiction may be found in the sovereignty of the debtor's domicil.

The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor, and is of value to the creditor, because he may be compelled to pay; and power over the debtor at his domicil is control of the ordinary means of enforcement. *Blackstone v. Miller,* 188 U. S., 205, 206, 23 S. Ct., 277, 47 L. Ed., 439. Tested by the criteria afforded by the authorities we have cited, Louisiana must be deemed to have had jurisdiction to impose the tax. The credits would have had no existence save for the permission of Louisiana; they issued from the business transacted under her sanction within her borders; the sums were payable by persons domiciled within the state, and there the rights of the creditor were to be enforced. If locality, in the sense of subjection to sovereign power, could be attributed to these credits, they could be localized there. If, as property, they could be deemed to be taxable at all, they could be taxed there."

The Court further stated: "Equally, then, had the state the power to tax the premium accounts here involved. They were not withdrawn from its constitutional authority, either by reason of the fact that they were payable in consideration of insurance, instead of loans or goods sold, or by the circumstance that the credits were not evidenced by written instruments. They were none the less enforceable credits arising in the local business."

It appears to us that the case of *Blackstone v. Miller,* 188 U. S., 189, 23 S. Ct., 277, 47 L. Ed., 439, is conclusive of the question. In that case Blackstone, the testator, died domiciled in Illinois. Under a statutory provision practically identical with ours, the State of New York levied a succession tax on a debt due the deceased by a New York firm and on a sum of money held on a deposit account to the credit of the deceased by a New York Trust Company. The debt was some $10,000; the deposit over $4,000,000. The Court in its decision appears to have lost sight of the insignificant (?) debt compared with the deposit, and directed its at-

tention principally to the latter. As both were involved and the tax sustained as to both, the observation in reference to the deposit may be considered applicable as well to the debt. The reasoning upon which the conclusion sustaining the tax was based is precisely in line with the test above quoted from the *Fuller case.*

In this discussion we have not considered the amendment of 1925 (Act March 30, 1925 [34 St. at Large, p. 201] to the Act of 1922, specifically providing for the tax to be laid upon *debts due by residents of this state to nonresidents,* as that amendment was passed after the death of Beidler. The appellants argue from the fact of amendment that the General Assembly has admitted that the Act of 1922 did not cover *debts.* This appears argumentatively plausible, but not conclusive. It is often expedient to apparently concede an objection, in order to avoid the question in the future, without actually conceding the validity of the objection, and this is the position which we think that the Legislature adopted. In our opinion, and we have so considered it, the amendment was not essential.

But it is insisted by the appellants that the question is concluded by the decision in the *Fuller case,* which holds that, where it appears that ancillary administration, or a resort in other form to the laws of this state to compel recognition of the transferees (executors) title, cannot be compelled in order to accomplish in fact the transfer authorized by the law of the testator's domicile, the debts cannot be considered as "property within the State," subject to the inheritance tax; and that, it appearing that the executors may proceed by attachment in another state, to collect the debts due by the domestic corporation to them, from a nonresident debtor of the domestic corporation, they come within the rule announced in the *Fuller case.*

It appears that under a contract between the Santee Company and the Brooklyn Cooperage Company, guaranteed by the American Sugar Refining Company, the Brooklyn Com-

pany was indebted to the Santee Company, at the time of the death of Beidler, in the sum of over $4,000,000. The appellants' contention is that as they have the right to proceed by attachment, in the State of New York, against the Brooklyn Company, as a debtor of the Santee Company, they may pass around the Courts and laws of South Carolina, without the necessity of procuring ancillary administration in South Carolina, or of resorting in any way to the laws of South Carolina, to establish their right of succession to these debts or of collecting them.

If the case falls within the rule announced in the *Fuller case,* there can be no doubt of the correctness of the appellants' contention; but we do not think that it does. In the *Fuller case* the immunity was sustained upon the ground that the bondholders who held bonds *executed and payable in New York, and physically in possession of the executors in that jurisdiction,* could acquire *jurisdiction of the person* of the mortgagor by foreclosing the mortgage in North Carolina, where a part of the railroad was located; and that for that reason resort to the Courts or to the laws of South Carolina was unnecessary. The Court said: "The securities not being physically present in this State, no ancillary administration could be compelled for the purpose of reducing them to possession. The bonds and certificates were payable in New York, and the resident debtor could not require ancillary administration in this State as a condition of payment. In the contingency that it should be necessary for the trustee to foreclose the mortgage for the benefit of the bondholders, since the line of railway mortgaged lies in two states, resort could be had to the Courts of North Carolina to foreclose the mortgage and sell the line of railway as a whole."

The situation in the case at bar is quite different. The claims in question, the debts due by the Santee Company to Beidler's estate, are not bonds or other securities having possibly a local situs at the domicile of the creditor, but are

assets of the decedent's estate, with an established local situs at the domicile of the debtor, subject to ancillary administration there; and as the authorities from this State, hereinbefore referred to, conclusively demonstrate, the title to them is in abeyance until an ancillary administrator should be appointed by the Courts of this State to receive it and perfect the succession. It seems clear, therefore, that if the domicilary administrator or executor in Chicago never had possession of or title to the choses in action involved, and could not have maintained an action upon them, either in South Carolina or elsewhere, an ancillary administrator appointed in New York, for the purpose of attachment, could acquire no higher right. The executors of Beidler had no power therefore, either directly or through an ancillary administrator appointed in New York, to attach the debt in New York which the Brooklyn Company owed to the Santee Company.

As is said in the Blackstone Case : "Power over the *person* of the debtor confers jurisdiction." The most that the executors could possibly have had, was power over certain property of the debtor, a proceeding *in rem,* which could not confer jurisdiction of the person."

This is illustrated in the case of *Bliss v. Bliss,* 221 Mass., 201, 109 N. E., 148, L. R. A., 1916A, 889. There a partnership having places of business in New York and in Massachusetts, with property in each state, gave a note to one of the partners who resided in New York and kept the note there. After the death of the payer of the note, the Boston office issued a check in payment of the note and transmitted it to New York. The tax authorities in Massachusetts sought to impose an inheritance tax upon the transfer of the note. The Court held that it could not be done for the reason that the holder of the note could acquire jurisdiction of the *person* of the makers in New York and realize his judgment out of property there without having to resort to the Courts or laws of Massachusetts.

So, also, by the case of *State v. Chadwick,* 133 Minn., 117, 157 N. W., 1076, 1078, 158 N. W., 637, L. R. A., 1916E, 1288. There bonds of a railroad company, incorporated under the laws of Minnesota but being subject to the jurisdiction of other states through which its lines ran, which were owned by a resident of Illinois, were held not subject to an inheritance tax in Minnesota, for the reason, as in the Fuller Case, that jurisdiction of the person of the debtor could be secured in a state other than Minnesota, and that accordingly there was no necessity for resorting to the Courts or laws of Minnesota. The Court said: "What we have said is in view of the facts before us showing *personal jurisdiction of the corporate debtor* in other states in which it is authorized to do business." To the same effect is *Re Gordon,* 186 N. Y., 471, 79 N. E., 722, 10 L. R. A. (N. S.), 1089.

It seems clear, therefore, that as the executors of Beidler could not have acquired title to the debts without taking out ancillary administration in this State, and could not have acquired jurisdiction of the person of the domestic corporation by attachment outside of the state, resort to the Courts and laws of South Carolina was inevitable. These considerations, by the test declared in the Fuller case, conclude the question of the state's right to impose the inheritance tax.

In this connection we desire to call attention to the case of *Baker v. Doe,* 88 S. C., 69, 70 S. E., 431, 432, 34 L. R. A., (N. S.), 510, which, in our opinion, contains a manifest misapprehension of the law upon the subject of foreign attachments. In that case it is declared: "Another reason why there was error in refusing to vacate the warrant of attachment is that the *debt* was not attached at the domicile of the *debtor*." This is clearly not the law as is demonstrated by the case from the Supreme Court of the United States which is cited and quoted from to sustain the proposition.

Appellant's attorneys in their lucid and able argument produced many authorities showing that the Courts of

several other states could attach debts owing to Santee River Cypress Lumber Company; then it may be asked, if such be the case, why could not the tax commission of South Carolina assume jurisdiction of the *debt itself,* which is located in this State? What the Courts of the other states could do *indirectly,* why could not the tax commission do *directly?* We therefore affirm the South Carolina tax commission as to the first issue on the $556,864.22 and $64,672 items for the reasons given above.

As to the second issue: We think that this matter is settled by the able opinion of Judge Cothran, Associate Justice of this Court, in the case of *Simmons v. Tax Commission,* 134 S. C., 261, 132 S. E., 37. It seems that the precise point raised by this exception was before the Court in that case, and we are bound by it. That case clearly holds that, under the Inheritance Tax Law we are now considering, the Federal estate tax is allowable as a deduction herein. The exceptions raising this question are sustained, except that, in making the calculation, the South Carolina Tax Commission must make the adjustment of the Federal tax that must be credited here in South Carolina, upon the basis of what the federal government actually charged and collected; and not necessarily upon the $204 valuation as contended for by the appellants. As the Federal tax must come off, it is just and fair that the basis should be *what was paid* and not upon any other basis. In making the settlement, therefore, if it appears, as stated by appellants "the Federal Government collected the estate tax upon a lesser valuation," then, in making the settlement, the lesser valuation must be used; as the actual amount the Federal Government received is the test and not figured at so much per stock value on the basis of the Tax Commission's figures. The reason is this: The entire amount that the Tax Commission figured, even on the $204 basis, under the law can be collected; then that fixes the amount. That total amount is fixed by the lawful authorities. But when it comes to

making the deduction of the Federal taxes, then *what was actually paid* must be the measure of the credit and deduction.

For the reasons so well stated by respondent in its. points and authorities, concerning the third question, the action of the Tax Commission is hereby affirmed.

As to the fourth issue, we think that the contention of the appellants should be sustained. The question is whether the 10 per cent. interest provided for by the act should begin to run from January 28, 1926, one year from the date of the qualification of the executors, or from July 31, 1925, one year from the date of the qualification of one Frank Stevenson as an *ad iterim* administrator of the Beidler estate.

It appears that Beidler died on March 4, 1924; that the will was not probated in Chicago until January 28, 1925, at which time the executors qualified. In the meantime, pending the probate and qualifications, under an act of Illinois, under circumstances creating a delay, as detailed in the act, Stevenson was appointed administrator of the estate for the purpose of making an inventory, safely keeping the assets, collections, preservation, and administration as he might be directed by the Court, and turning the estate over to the executor or administrator when qualified. It does not appear that he did otherwise than collecting and preserving the assets, if even he went so far as that; no activities on his part with reference to carrying out the provisions of the will are shown, or that he received from the Court any directions in this respect. We think that under the circumstances he was nothing more than an *ad interim* custodian, without other power; and that the real administration began with the probate of the will and the qualification of the executors on January 28, 1925; that they had until January 25, 1926, to pay the tax, and that the 10 per cent. interest, in the nature of a penalty, did not begin to run until that date.

The appeal does not question the right of the commission to impose a tax upon the stock owned by Beidler at the time of his death in Chicago, and which was located there in his possession. The authorities appear to sustain the right. 26 R. C. L., 216.

It is the judgment of this Court that the judgment and action of the Tax Commission as to the first and third questions be affirmed; that as to the second and fourth questions the appeal is sustained and the Tax Commission reversed, and that the matter be referred back to the Tax Commission for readjustment in conformity with the judgment of this Court herein expressed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur.

## PER CURIAM

There were two motions argued before the Court in the above stated case at the January term:

(1) A motion by the appellants, upon the mandate of the Supreme Court of the United States and upon all other proceedings herein, to reverse the holding of the South Carolina Tax Commission in conformity with the opinion of the Supreme Court of the United States (282 U. S., 1, 51 S. Ct., 54, 75 L. Ed., 131), and to remand the matter to the Tax Commission solely for readjustment of the tax on the estate of Francis Beidler in conformity with said reversal;

(2) A motion by the respondent, South Carolina Tax Commission, to refer the case back to the Tax Commission to take testimony and make further investigation into the question whether the indebtedness of the Santee River Cypress Lumber Company to Francis Beidler had acquired a business situs for taxation within the State of South Carolina so as to be liable under the Inheritance Tax Law of said State (Act Feb. 23, 1922 [32 St. at Large, p. 800]).

> The respondent had the opportunity to and did raise and argue the question before the Supreme Court of the United States which it now proposes to offer evi-

dence in reference to. This question was squarely decided by the Supreme Court of the United States, and, while the decision was based upon the lack of sufficient evidence to sustain the contention of the respondent as to the business situs of the indebtedness in the State of South Carolina, it did not remand the case for the purpose of taking further testimony upon this point, and this Court is bound by the finality of the judgment pronounced by the Supreme Court of the United States reversing the Tax Commission upon the taxation of said indebtedness. Even if the respondent had the right to again raise the question as not having decided upon the merits, the motion should have been supported by some showing of success. The motion of the respondent above stated must therefore be refused.

Under this view of the case the appellants are entitled to the order for which they moved as above stated.

An answer to other questions proposed is unnecessary because of our conclusion that the judgment against the defendants cannot be sustained.

Judgment reversed.

It is so ordered.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES COTHRAN, STABLER and CARTER and ACTING ASSOCIATE JUSTICE COSGROVE concur.

NOTE: For the information of the bar the opinion of the U. S. Supreme Court is herewith published:

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court:

On March 4, 1924, Francis Beidler, a resident of Chicago, Illinois, died in that State, leaving a will by which he bequeathed a portion of his personal property to his wife and children directly, and gave the residue in trust for their benefit and for charitable uses. The will was probated in Illinois, and Francis Beidler, II, and George Engelking, the appellants, qualified as executors.

At the time of the death of the testator, he owned 8,000 shares of the capital stock of Santee River Cypress Lumber Company, a corporation organized under the laws of South Carolina and doing business in that State. The remainder, 7,000 shares, were owned by the testator's wife and children. In addition, the Santee River Cypress Lumber Company was indebted to the testator in the sum of $556,864.22, for advances made by him to the company, and in the sum of $64,672 for dividends previously declared on his shares. The indebtedness was an open, unsecured account which was entered upon the books of the company kept in South Carolina. The testator also kept a complete set of personal books in Chicago upon which appear entries of the amounts due him by the company except the item of dividends.

The total amount of the indebtedness for advances and dividends, $621,536.22, was included by the attorney general of Illinois in the computation of the value of the decedent's estate for the purpose of fixing the inheritance tax payable to that state.

The executors filed with the South Carolina Tax Commission, as required by the Inheritance Tax Law of South Carolina, an affidavit setting forth all the above-mentioned assets. The payment of the succession tax to the State of South Carolina with respect to the shares of stock owned by the testator in the Santee River Cypress Lumber Company was not contested by the executors, and by agreement the value of these shares was fixed at $204 per share, or $1,632,000. The South Carolina Tax Commission also levied a tax upon the transfer of the indebtedness, overruling the claim of the executors that the State of South Carolina had no jurisdiction to impose such a tax, and that the levy of it would constitute a deprivation of property without due process of law in violation of the 14th Amendment of the Federal Constitution. This contention was renewed upon the appeal of the executors to the Supreme

Court of the State of South Carolina. That Court sustained the action of the Tax Commission with respect to the taxability of the transfer of the indebtedness, and the executors bring this appeal to review that part of the judgment.

In reaching its conclusion as to the validity of the tax, the State Court relied chiefly upon the decision of this Court in *Blackstone v. Miller*, 188 U. S., 189, 47 L. Ed., 439, 23 S. Ct., 277. That decision has been overruled, and it is now established that the mere fact that the debtor is domiciled within the State does not give it jurisdiction to impose an inheritance or succession tax upon the transfer of the debt by a decedent who is domiciled in another state. *Farmers Loan & T. Co. v. Minnesota*, 280 U. S., 204, 74 L. Ed., 371, 65 A. L. R., 1000, 50 S. Ct., 98; *Baldwin v. Missouri*, 281 U. S., 586, 74 L. Ed., 1056, ... A. L. R., ..., 50 S. Ct., 436. The transfer is taxable by the State of the domicile of the deceased owner. *Blodgett v. Silberman*, 277 U. S., 1, 72 L. Ed., 749, 48 S. Ct., 410. Open accounts, including credits for cash deposited in bank, fall within this principle, and its application is not defeated by the mere presence of bonds or notes, or other evidences of debt, within a state other than that of the domicile of the owner. *Baldwin v. Missouri*, 281 U. S., 586, 74 L. Ed., 1056,—, A. L. R., —, 50 S. Ct., 436, supra.

It is sought to sustain the tax by South Carolina upon the ground that the indebtedness had what is called a "business situs" in that State, and the State Court adverted to this basis for the tax. In *Farmers Loan & T. Co. v. Minnesota*, 280 U. S., 204, 74 L. Ed., 371, 65 A. L. R., 1000, 50 S. Ct., 98, supra, this Court reversed the question of business situs, saying: "*New Orleans v. Stempel*, 175 U. S., 309, 44 L. Ed., 174, 20 S. Ct., 110, *Bristol v. Washington County*, 177 U. S., 133, 44 L. Ed., 701, 20 S. Ct., 585, *Liverpool & L. & G. Ins. Co. v. Board of Assessors*, 221 U. S., 346, 55 L. Ed., 762, L. R. A., 1915C, 903, 31 S. Ct., 550, recog-

nize the principle that choses in action may acquire a situs for taxation other than at the domicile of their owner if they have become integral parts of some local business. The present record gives no occasion for us to inquire whether such securities can be taxed a second time at the owner's domicile." But a conclusion that debts have thus acquired a business situs must have evidence to support it, and it is our province to inquire whether there is such evidence when the inquiry is essential to the enforcement of a right suitably asserted under the Federal Constitution.[1]

Headnote 3

In the present case, beyond the mere fact of stock ownership and the existence of the indebtedness, there is no evidence whatever, having any bearing upon the question, save a copy of the decedent's account with the corporation, taken from his books which were kept by him in his office at Chicago. The various items of debit and credit in this account, in the absence of any further evidence, add nothing of substance to the fact of the indebtedness as set forth in the agreed statement and afford no adequate basis for a finding that the indebtedness had a business situs in South Carolina.

That the decedent was largely interested in the affairs of the corporation is apparent; he owned a majority of its stock, but nothing is shown which derogates from its existence as a corporation, transacting its business as such,

[1] *Kansas City Southern R. Co. v. H. Albers Commission Co.*, 223 U. S., 573, 591–593, 56 L. Ed., 556, 565–567, 32 S. Ct., 316; *Creswill v. Grand Lodge, K. P.*, 225 U. S., 246, 261, 56 L. Ed., 1074, 1080, 32 S. Ct., 822; *Northern P. R. Co. v. North Dakota*, 236 U. S., 585, 593, 59 L. Ed., 735, 740, L. R. A. 1917-F, 1148, P. U. R. 1915-C, 277, 35 S. Ct., 429, Ann. Cas. 1916-A, 1; *Ward v. Love County*, 253 U. S., 17, 22, 64 L. Ed., 751, 758, 40 S. Ct., 419; *Davis v. Wechsler*, 263 U. S., 22, 24, 68 L. Ed., 143, 145, 44 S. Ct., 13; *Railroad Commission v. Eastern Texas R. Co.*, 264 U. S., 79, 86, 68 L. Ed., 569, 572, 44 S. Ct., 247; *New York C. R. Co. v. New York & P. R. Co.*, 271 U. S., 124, 126, 70 L. Ed., 865, 867, 46 S. Ct., 447; *Ancient Egyptian Arabic Order v. Michaux*, 279 U. S., 737, 745, 73 L. Ed., 931, 936, 49 S. Ct., 485.

with corresponding corporate rights and liabilities. The interest of the decedent as a stockholder was a distinct interest,[2] and the estate of the decedent has been taxed by South Carolina upon the transfer of his stock according to its agreed value. With respect to the items of indebtedness of the corporation to the decedent, the latter appears upon the record simply as a creditor, with his domicile in Illinois.

For these reasons, the judgment of the State Court, so far as it relates to the taxation of the transfer of the debts in question, must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

Mr. Justice Holmes:

The decisions of last term cited by the Chief Justice seem to sustain the conclusion reached by him. Therefore, Mr. Justice Brandeis and I acquiesce, without repeating reasoning that did not prevail with the Court.

---

[2] *Van Allen v. Assessors* (*Churchill v. Utica*), 3 Wall., 573, 584, 18 L. Ed., 229, 234; *Hawley v. Malden,* 232 U. S., 1, 12 58 L. Ed., 477, 482, 34 S. Ct., 201, Ann. Cas. 1916-C, 842; *Eisner v. Macomber,* 252 U. S., 189, 214, 64 L. Ed., 521, 531, 9 A. L. R., 1570, 40 S. Ct., 189; *Rhode Island Hospital Trust Co. v. Doughton,* 270 U. S., 69, 83, 70 L. Ed., 475, 480, 43 A. L. R., 1374, 46 S. Ct., 256.

Adv. Ops. Oct. Term, 1930.